The FEDERAL LAND BANK OF SAINT PAUL, Plaintiff and Appellant,

v.

David A. OVERBOE and Debora Overboe, Defendants and Appellees,

and

United States of America, Production Credit Association of Fargo, Victor P. Zajac, and Ames Sand & Gravel, Inc., Defendants.

Civ. No. 11129.

Supreme Court of North Dakota.

April 16, 1987.

Gunhus, Grinnell, Klinger, Swenson & Guy, Fargo, for plaintiff and appellant; argued by Craig R. Campbell.

Bruce E. Bohlman, Grand Forks, for defendants and appellees.

GIERKE, Justice.

The Federal Land Bank of Saint Paul [FLB or Bank] appeals from a district court judgment which denied foreclosure of its mortgage on the farmland of David and Debora Overboe and ordered that the principal and interest owing on the underlying obligation be reamortized over the longest period allowed under FLB regulations. We affirm, but modify the judgment by striking the order that the loan be reamortized.

The Overboes executed a mortgage to FLB during December 1979. The principal sum of the underlying promissory note was $285,000, and payments were due on July 1 of every year beginning in 1980. The Overboes made the first mortgage payment, but the July 1, 1981 payment was only partially made, and the 1982 payment was not made until February 1983. During June 1983, David Overboe requested that his payment date be changed from July 1 to December 31 of each year to more properly meet the cash flow needs of his farming operation. Roger Durensky, a loan officer for the Federal Land Bank Association of Fargo, responded by letter that in order to grant the change in payment dates it would be necessary to reamortize the loan, and that "based on your financial statement, income and expense information available to us, we find that we are unable to grant a reamortization of this loan." Overboe met with Durensky after the initial denial of his request and stated that he would present his own income and expense statements for the past three years for FLB officials to review. Overboe supplied the information, including income projections for the 1983 crop year. FLB officials ultimately denied the request in August 1983. Overboe then requested a ten-day extension to make the delinquent July 1, 1983 payment, but this request was also denied.

FLB brought this foreclosure action in November 1983. Overboe asserted in part that the foreclosure action should be dismissed because FLB "failed to follow its own policies in this matter and has failed to follow Congressional Mandates in regard to past due loans." Following a bench trial, the court denied FLB's request to foreclose the mortgage.[1] The court found

---

1. The court also dismissed the Overboes' counterclaim, their third-party complaint against Kenneth Bergh, president of the Federal Land Bank Association of Fargo, and their assertion

that the policies of FLB mandated a thorough evaluation of the Overboes' situation and that FLB "failed to follow its own procedures and guidelines with respect to the duties owed to borrowers generally, and reconsideration of Mr. Overboe's request for extension." The court concluded that the "payment obligation should be reformed and this equitable remedy is appropriate for the situation and will do justice to both parties." The court ordered that the promissory note be reformed "so that the interest at the regular rate is capitalized into the principal obligation and that the obligation shall be extended for the maximum period of time allowable under the rules" of FLB. The court further ordered that the first payment shall be due December 1, 1985, and be applied to the principal obligation. This appeal followed.

FLB asserts in effect that a failure to comply with the policies, regulations, and procedures promulgated under the Farm Credit Act of 1971, 12 U.S.C. § 2001 *et seq.*, is not a valid defense to a foreclosure action. Alternatively, FLB asserts that the trial court's findings that it did not follow its policies and procedures are clearly erroneous.

The federal Farm Credit Administration regulation at issue in this case, 12 C.F.R. § 614.4510(d)(1), provides:

"(d) In the development of the bank and association loan servicing policies and procedures, the following criteria shall be included:

"(1) *Term loans.* The objective shall be to provide borrowers with prompt and efficient service with respect to justifiable actions in such areas as personal liability, partial release of security, insurance requirements or adjustments, loan division or transfers, conditional payments, extensions, deferments or rea-

mortizations. Procedures shall provide for adequate inspections, reanalysis, reappraisal, controls on payment of insurance and taxes (and for payment when necessary), and prompt exercise of legal options to preserve the lender's collateral position or guard against loss. *The policy shall provide a means of forbearance for cases when the borrower is cooperative, making an honest effort to meet the conditions of the loan contract, and is capable of working out of the debt burden.* Loan servicing policies for rural home loans shall recognize the inherent differences between agricultural and rural home lending." [Emphasis added.]

Pursuant to this regulation, the Federal Land Bank of Saint Paul adopted "District Policy 2501," which was in effect at all pertinent times in this case and provides as follows:

"A borrower is required to pay loan installments and taxes on or before the due date and maintain required insurance coverage. However, if circumstances beyond the borrower's control prevent prompt payment, appropriate assistance may be granted provided the borrower meets the following tests:

"1. Is doing his honest best, and

"2. Is applying the proceeds of production, over and above necessary living expenses, on the payment of primary obligations, and

"3. Is taking proper care of the security, and

"4. Is capable of working his way out of his existing burden of debt.

"Borrowers who are deserving of assistance in accordance with the above policy should be expected to notify the association of their problems and request assistance prior to the due date of an installment." [2]

---

of the confiscatory price defense. The Overboes have not filed a cross-appeal challenging these rulings.

2. The Federal Land Bank of Saint Paul also adopted "Policy 2550," which similarly provides: "The Association shall initiate foreclosure of delinquent loans with borrowers who do not qualify for assistance, or who have failed to perform favorable to assistance previously ex-

tended, in accordance with the following basic provisions:
"1. Is not doing his best;
"2. Is not applying the proceeds of production, after paying necessary living expenses, to pay primary obligation;
"3. Is not taking proper care of the security; and

In *Federal Land Bank of St. Paul v. Halverson,* 392 N.W.2d 77 (N.D.1986), we addressed the effect of the administrative forbearance regulation in the context of a summary judgment rendered against the defendant borrower. We recognized that federal courts have unanimously concluded that borrowers do not have a private cause of action against federal land banks for damages or injunctive relief under the Farm Credit Act and regulations, but noted that these decisions do not bear "directly on the different issue of whether a qualified borrower may resist a foreclosure upon the grounds that he did not receive the forbearance called for by the regulation." *Halverson, supra,* 392 N.W.2d at 84.

We discussed the three reported state decisions which had addressed the issue, *see Federal Land Bank of Wichita v. Read,* 237 Kan. 751, 703 P.2d 777 (1985); *Federal Land Bank of Springfield v. Saunders,* 108 A.D.2d 838, 485 N.Y.S.2d 342 (1985); *Farmers Production Credit Association of Ashland v. Johnson,* 24 Ohio St.3d 69, 493 N.E.2d 946 (1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 878, 93 L.Ed.2d 832 (1987), and concluded that to decide the effect of the administrative forbearance regulation in a foreclosure action, "a better exposition of the facts is needed about the development of a forbearance policy by the Bank, as well as about Halversons' qualifying for forbearance and about the Bank's actions in extending forbearance to Halversons." *Halverson, supra,* 392 N.W.2d at 85. We therefore reversed the summary judgment and remanded for trial.

This case reaches us after a full trial on the merits of the alleged administrative forbearance defense. We deem this record sufficient to resolve the issue.

■ An action to foreclose a mortgage is an equitable proceeding. *See Union State*

Bank *v. Miller,* 335 N.W.2d 807, 809 (N.D.), *cert. denied,* 464 U.S. 1019, 104 S.Ct. 554, 78 L.Ed.2d 727 (1983); *First National Bank of Waseca v. Paulson,* 69 N.D. 512, 288 N.W. 465, 471 (1939). Although no implied private right of action may exist for damages or injunctive relief under the Farm Credit Act and regulations,[3] *e.g., Bowling v. Block,* 785 F.2d 556 (6th Cir.), *cert. denied sub nom. Bower v. Lyng,* —— U.S. ——, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986), courts have recognized that federal regulations which have been held to not imply a private cause of action may nevertheless afford a basis for an equitable defense to a foreclosure action.

In a similar context, under the National Housing Act, 12 U.S.C. §§ 1701 *et seq.,* the Department of Housing and Urban Development (HUD) has promulgated regulations governing "conditions of special forbearance" upon default, the "recasting" of mortgages under certain circumstances, and other mortgage servicing techniques. *See* 24 C.F.R. §§ 203.500 *et seq.* At one time these mortgage servicing guidelines were published in a HUD handbook but were not yet a part of the Code of Federal Regulations. *See Brown v. Lynn,* 392 F.Supp. 559 (N.D.Ill.1975). Although it has been consistently held that the HUD handbook and regulations do not imply a private cause of action for alleged violations of the guidelines therein, *e.g., Roberts v. Cameron-Brown Co.,* 556 F.2d 356 (5th Cir.1977), courts have made a distinction regarding the effect of those guidelines in state foreclosure proceedings. After ruling that the HUD guidelines were not enforceable in an action seeking monetary damages and injunctive relief, the court in *Brown v. Lynn, supra,* 392 F.Supp. at 562–563, stated:

"The decision does not limit state or federal foreclosure courts from exercising their equity powers by refusing to grant foreclosures where mortgagees

---

"4. Is not able to work his way to the point where he can manage his debt."

**3.** We note that the Farm Credit Act of 1971 was amended in 1985 to include 12 U.S.C. § 2199(b):
"(b) In accordance with regulations of the Farm Credit Administration, System institu-

tions shall develop a policy governing forbearance. Each System institution shall provide borrowers with a copy of the institution's policy regarding forbearance at such time or times as the Farm Credit Administration shall prescribe in such regulations."

have flagrantly disregarded the forebearance (sic) provisions of the HUD Handbook.... Our consideration of the enforceability of the HUD Handbook is limited solely to plaintiffs' instant action for monetary damages and injunctive relief for alleged violations of the non-binding guidelines. Since the Handbook does not impose legal obligations upon the mortgagees, we find no basis for such an action against them. Our opinion goes no further.

"That holding, however, does not preclude foreclosure courts from allowing mortgagors to raise non-compliance with the Handbook as a defense to a 'quick' foreclosure....

"On the theory that the guidelines are sensible, equitable standards of conduct, consistent with, and issued in furtherance of, the national housing goals, foreclosure courts can, and in appropriate instances should, direct the parties to pursue and exhaust the alternatives to foreclosure enumerated in the Handbook. Merely rubber-stamping mortgagees' foreclosure actions, when they have acted barely within the formal legal bounds of these loosely defined housing programs, will contribute further to the needless loss of homes and to the creation of virtual ghost areas within our inner cities. Foreclosure courts need not woodenly perpetuate the national tragedy surrounding quick foreclosures ..., but, where appropriate, they should require adherence to the policies and procedures prescribed by the Handbook. Such an approach is not inconsistent with our rulings herein."

Applying this rationale, various courts have held that the failure of a lender to follow HUD regulations governing mortgage servicing constitutes a valid defense sufficient to deny the lender the relief it seeks in a foreclosure action. *See Federal National Mortgage Association v. Moore*, 609 F.Supp. 194 (N.D.Ill.1985); *Cross v. Federal National Mortgage Association*, 359 So.2d 464 (Fla.Dist.Ct.App.1978); *Bankers Life Co. v. Denton*, 120 Ill.App.3d 576, 76 Ill.Dec. 64, 458 N.E.2d 203 (1983); *Heritage Bank, N.A. v. Ruh*, 191 N.J.Super. 53, 465 A.2d 547 (Ch.Div.1983); *Associated East Mortgage Co. v. Young*, 163 N.J.Super. 315, 394 A.2d 899 (Ch.Div.1978); *Federal National Mortgage Association v. Ricks*, 83 Misc.2d 814, 372 N.Y.S.2d 485 (1975). *But see Manufacturers Hanover Mortgage Corp. v. Snell*, 142 Mich.App. 548, 370 N.W.2d 401 (1985); *Federal National Mortgage Association v. Prior*, 128 Wis.2d 182, 381 N.W.2d 558 (Ct.App.1985).

■ Just as the HUD regulations were issued in furtherance of national housing goals, the administrative forbearance regulation at issue in this case was adopted by the Farm Credit Administration in furtherance of Congress's goal under the Farm Credit Act of fostering agricultural development. *See Federal Land Bank of St. Paul v. Lillehaugen*, 404 N.W.2d 432 (N.D. 1987). Allowing FLB to foreclose its mortgages without regard to the administrative forbearance regulation would be inimical to the achievement of this goal. We therefore conclude that the failure of FLB to comply with the administrative forbearance regulation and policies adopted pursuant to the regulation gives rise to a valid equitable defense to a foreclosure action under state law.

However, adopting noncompliance with the forbearance regulation as a valid defense to a foreclosure action is not synonymous with allowing a foreclosure court to substitute its judgment for that of FLB's loan officers. We recognize that courts have neither the training nor the experience of bank loan officers in making loan servicing decisions. *Cf. Federal Land Bank of Wichita v. Read*, 237 Kan. 751, 703 P.2d 777, 780 (1985). Therefore, we believe a court's inquiry should be limited in scope.

■ While courts are not qualified to make loan servicing decisions, a court is qualified to determine whether the Bank has established a general policy of forbearance and whether it applied that policy in arriving at its decision to seek foreclosure. Thus, when the forbearance defense has been raised by a borrower in a foreclosure action, the court should initially make find-

ings of fact on whether a forbearance policy has been adopted by the Bank and, if so, whether that policy was applied to the borrower in the case before it, *i.e.*, whether the Bank considered the borrower's qualifications for forbearance relief in accordance with its policy. At this point in the inquiry, the trial court's function is not to factually determine whether the Bank reached a correct or incorrect conclusion on the borrower's qualifications for forbearance relief, but is to determine only whether the borrower's qualifications for relief were considered by the Bank at all.

If the trial court finds that the Bank considered the borrower's qualifications in accordance with its procedures, the court's next inquiry focuses upon the Bank's substantive decision to not grant forbearance relief. However, the trial court's standard of review on this matter should be extremely narrow. In 5 K. Davis, *Administrative Law Treatise* § 28:7, at pp. 285 and 289 (2d ed. 1984), the author states:

"A court *is* well qualified to determine whether [an] agency abused its discretion, even with respect to a question it is not qualified to decide.... All courts are qualified to inquire into such questions, not in order to decide what the court would do if it were making the decision, but in order to decide whether or not the agency was behaving rationally in making the decision, that is, whether the agency abused its discretion.

\* \* \* \* \* \*

"A judicial check for abuse of discretion is entirely appropriate when discretion is broad, when it involves political or economic or managerial choices, and when it is based on special knowledge or expertise, because the administrator may be abusing his discretion by violating the statute, by emphasizing facts on one side and ignoring opposing facts, by reacting to emotional and irrelevant considerations, or by otherwise acting unreasonably." [Emphasis in original.]

■■■■ Thus, a trial court cannot overturn a FLB loan officer's determination of a lack of borrower qualification for forbearance relief unless the borrower can

prove that the Bank abused its discretion by acting in an arbitrary, capricious, unreasonable or unconscionable manner. On appeal, we will not disturb a trial court's determination on this matter unless the abuse of discretion standard of review "appears to have been misapprehended or grossly misapplied." *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951).

■■■■ It is undisputed, and the trial court found as a fact, that FLB had adopted a forbearance policy which was in effect at all pertinent times in this case. District Policy 2501 provides for forbearance relief if the borrower: 1) is doing his honest best; 2) is applying the proceeds of production, over and above necessary living expenses, on the payment of primary obligations; 3) is taking proper care of the security; and 4) is capable of working his way out of his existing burden of debt. The trial court also found, however, that FLB "failed to follow its own procedures and guidelines with respect to the duties owed to borrowers generally, and reconsideration of Mr. Overboe's request for extension." We deem this finding tantamount to a finding that FLB did not consider Overboe's qualifications for forbearance relief in accordance with its policy.

In determining the sufficiency of the evidence to sustain the trial court's findings of fact, the evidence must be viewed in the light most favorable to the findings. *Leno v. Ehli,* 339 N.W.2d 92, 97 (N.D.1983). A finding of fact is clearly erroneous under Rule 52(a), N.D.R.Civ.P., when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Wastvedt v. State,* 371 N.W.2d 330, 334 (N.D.1985). A finding is not clearly erroneous merely because we might have reached a different result had we tried the case. *Bye v. Elvick,* 336 N.W.2d 106, 112 (N.D.1983).

In addition to Overboe's testimony that FLB did not follow its policies, Durensky, the loan officer in charge of the Overboe file, testified as follows:

"Q [By Mr. Bohlman] Sometime between August 8, when the information was submitted and August 15, when the letter was written to Mr. Overboe, you had your discussions with Mr. Bergh and with Mr. Thorp?

"A [By Mr. Durensky] Yes.

"Q And in your letter of August 15, then you say there apparently would be no alternative but to bring the loan current. And you asked for the payment to be made.

"A Yes.

"Q Following your discussions with Mr. Bergh or Mr. Thorp, did you speak with Mr. Overboe concerning any other option that may be available to him?

"A Not that I recall.

"Q Such as deferral of loan payments?

"A No.

"Q Or selling certain assets in order to reduce the debt load?

"A No.

"Q Or finding alternate sources of financing?

"A No.

"Q Or restructuring the loan as far as requiring additional security?

"A No.

"Q In other words there was really nothing discussed with him at all concerning any other option once the decision was made not to change this payment date. That was essentially the only action that was considered?

"A Yes."

Although options such as deferral of payments and restructuring the loan have been defined by FLB as methods of forbearance relief,[4] we believe that a reasonable interpretation of FLB's forbearance policy requires that these alternatives be considered by a loan officer in determining whether the borrower qualifies as being capable of working his way out of the existing burden of debt. Durensky essentially admitted as much during his testimony.[5]

---

4. The forbearance procedure, "Number CROPS 2504," approved in February 1985 and applicable to Federal Land Bank Associations, sets forth the following "Forms of Forbearance":

"Forbearance may be granted in the following forms:
" * Informal extension,
" * Formal extension,
" * Deferment of principal, or
" * Reamortization.
"Refer to procedures for each of these actions to determine the appropriate course of action for servicing deserving borrowers."

5. During the trial, Durensky testified as follows:

"Q [By Mr. Bohlman] And was there a policy basically in effect to try to work with borrowers, member borrowers to the maximum extent possible?

"A [By Mr. Duresnky] To work with those borrowers who are eligable [sic] for assistance and had a reasonable chance of success.

"Q Do you agree that foreclosure was deemed to be the last resort?

"A Yes.

"Q And that policy would have been in effect at that time, as it is today?

"A Yes.

"Q And I would ask you whether or not you agree with this statement. I am going to quote from a statement made from a Mr. Larry Edward who is Deputy Governor for Supervision of Farm Credit Administration. Testified before a congressional committee on the Committee on Appropriation in the House of Representatives. He testified as follows: I will ask if you agree with his testimony. The first thing that the loan officer wants to do is to get from the borrower his current financial condition, what his business plans are, how those plans fit with his financial condition. With that in front of him and the borrower's credit rating in front of him, the loan officer has the ability to grant forbearance to delay or waive payments of principal and interest, to restructure the loan to spread out the maturity and thereby lower payments.

" 'If none of those options can work, the loan officer looks at what the possibilities are for shifting short-term debt to a long-term creditor, shifting it to the land bank system or insurance company to again spread out payments and not have so much come due in a single year. If that does not work he looks at the assets that the borrower has that could be sold that are not as productive as they should be—hoping to reduce the borrower's debt burden to a manageable level that way.

" 'If there is no opportunity to do that, the loan officer has the authority and does work with the Farm Home Administration and other creditors in an attempt to find other financing for that borrower.'

* * * * * *

"Q Do you agree with that statement as a fair statement of the duties of a loan officer with the Federal Land Bank, such as yourself?

"A For the most part, yes."

We also note that the forbearance procedure, "Number CROPS 2504," approved in February

Thus, we cannot say that the trial court's finding that FLB failed to follow its procedures and guidelines is clearly erroneous. Accordingly, we conclude that the trial court did not err in denying FLB foreclosure of its mortgage. Until such time as FLB fairly complies with its own procedures and guidelines, foreclosure is not available.

The trial court further ordered that the Overboes' loan be reamortized over the longest period allowed under FLB regulations. The court reasoned that this "reform[ation]" of the payment obligation would "do justice to both parties." The trial court had no authority to order reamortization of the loan under the guise of "reformation."

Overboe has not asserted any grounds to support reformation of a written instrument. *See* §§ 9–07–05 and 32–04–17, N.D.C.C.; *Wehner v. Schroeder,* 354 N.W.2d 674 (N.D.1984). Moreover, the borrower's remedy for noncompliance with the forbearance regulation is limited to a denial of the foreclosure action. *See, e.g., Moore, supra; Denton, supra; Ruh, supra.* We therefore modify the judgment by striking the trial court's order that the loan be reamortized.

As modified, the judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

1985 sets forth as one of the considerations of determining a borrower's capability of working to the position of being able to manage the debt:

" * Whether forbearance will be complemented by other remedial devices or strategies and their probable impact."