926 F.2d 859
 The FEDERAL LAND BANK OF SPOKANE, a corporation, Plaintiff-Appellee,
v.
L.R. RANCH COMPANY, a Montana corporation, John Barnard
Murnion and Loriene Murnion, husband and wife, William E.
Murnion and Karen J. Murnion, husband and wife, John W.
Murnion, Defendants-Appellants,
and
United States of America, Defendant.
 No. 89-35203.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 13, 1990.
Decided Feb. 15, 1991.
 
 Randy S. Laedeke, Billings, Mont., for defendants-appellants.
 James N. Westwood, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Montana.
 Before FLETCHER, FERGUSON and FERNANDEZ, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 L.R. Ranch Company and five members of the Murnion family[1] appeal the district court's denial of their motion to stay state law foreclosure proceedings[2] based on provisions of the federal Agricultural Credit Act of 1987, 12 U.S.C. Sec. 2202 et seq. We lack jurisdiction to review the district court's order and therefore dismiss the appeal.
 
 BACKGROUND
 
 2
 The Federal Land Bank of Spokane ("the bank") loaned $600,000 to the borrowers in January 1975. The loan was reamortized in June 1981. The bank commenced foreclosure on the mortgage in state court on September 3, 1986 after the borrowers had become more than two years and $217,000 in arrears. The parties had engaged in various litigation activities--e.g., removal of the foreclosure action to federal court, dismissal of the borrowers' counterclaims--before the Agricultural Credit Act of 1987 took effect on January 6, 1988.
 
 
 3
 On February 16, 1988, the bank sent a letter to the borrowers informing them of their right under the Act to apply for restructuring of their loan.[3] The letter instructed the borrowers to submit a list of specified materials within 45 days if they wished to pursue restructuring. Otherwise, the letter indicated, the bank would proceed with the foreclosure. The letter encouraged the borrowers to meet with their credit officer to discuss any questions about the loan's status or the restructuring process. There is some dispute, however, as to whether such a meeting was actually available to the borrowers.
 
 
 4
 The borrowers submitted an application for restructuring on March 28, 1988, one week before the April 4 deadline. The following day the bank sent the borrowers a letter stating that their application was incomplete and that they could have until April 14 to complete the missing information. The bank pointed out that the corporation's officers had not signed the application or balance sheet and that they did not include "all items specifically requested" in the February 16 letter. The bank did not in that letter and does not now specify precisely which items were lacking in the original application. The borrowers assert that the application was incomplete and unsigned due to the bank's failure to provide them with land valuations which they had requested previously and which they required in order to verify the contents of the application. The bank disputes when the borrowers initially requested that information and whether it is even necessary in order to complete the loan application form.
 
 
 5
 On April 13, the borrowers' lawyer requested additional time from the bank in order to complete the restructuring application. He also requested a loan history and all appraisals on the property made by the bank.[4] The bank denied the request for an extension of time but indicated that it would nevertheless consider any restructuring application submitted prior to summary judgment being granted in the foreclosure proceeding and that it would suspend the foreclosure action while the application was considered. The bank informed the borrowers, however, that an application which was submitted after the original deadline and was eventually denied would not be entitled to the credit review process provided by the Act.
 
 
 6
 The borrowers ultimately resubmitted a completed loan application on August 18, 1988. At approximately the same time, on August 24, the borrowers filed a motion to stay all foreclosure proceedings under 12 U.S.C. Sec. 2202a(b)(3). On September 2, the bank requested more specific information from the borrowers on two points of the restructuring application. On October 21, the bank informed the borrowers that it had not accepted what it termed the borrowers' "settlement proposal." Its stated reasons for rejecting the restructuring application were that 1) the earnings available for the debt service would not support the outstanding obligations; 2) the proposal did not provide sufficient return to the bank; and 3) the debts appeared to be misstated on the balance sheet. On November 1, the borrowers demanded a review of the bank decision. It appears that the bank never replied to that demand. In any event, the borrowers' application was not reviewed by a credit review committee pursuant to 12 U.S.C. Sec. 2202.
 
 
 7
 On March 9, 1989, the district court denied the borrowers' motion for a stay of the foreclosure proceedings. The district court found that the borrowers had waived their review rights by not filing a complete application either within 45 days of receiving the bank's initial notice or before the bank's extended deadline. The borrowers appeal the district court's order denying the stay, claiming that their application should not have been considered untimely and that the bank has not met its obligations to pursue restructuring with the defendants under 12 U.S.C. Sec. 2202a.
 
 DISCUSSION
 
 8
 We consider as a threshold matter whether we have jurisdiction to review the district court's order. The borrowers assert that we have jurisdiction over the appeal under either 28 U.S.C. Sec. 1291 or 28 U.S.C. Sec. 1292(a)(1).
 
 
 9
 We first address the question of whether the collateral order doctrine permits review under 28 U.S.C. Sec. 1291.[5] "[A]s a general rule a district court's decision is appealable under that section only when the decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 275, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988), quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). The order in this case has no such effect. Indeed, just as in Gulfstream, the effect of the challenged order is to continue the litigation in the district court, not to terminate it. However, the "collateral order doctrine" initially articulated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and reiterated in Gulfstream provides a narrow exception to the "final judgment rule."
 
 
 10
 In Gulfstream the Court rearticulated the "three-pronged test to determine whether an order that does not finally resolve a litigation is nonetheless appealable under Sec. 1291." 485 U.S. at 276, 108 S.Ct. at 1137. To come under the "collateral order exception," the challenged order must (1) "conclusively determine the disputed question"; (2) "resolve an important issue completely separate from the merits of the action"; and (3) "be effectively unreviewable on appeal from a final judgment." Id. (internal quotations omitted). Although Gulfstream addresses the threshold question of appealability, it inevitably requires us to telescope ahead to the underlying issue so that we can assess whether it is "important ... completely separate ... [and] effectively unreviewable on appeal from a final judgment." We thus turn to an analysis of the substantive provision underlying the borrowers' request for a stay, 12 U.S.C. Sec. 2202a(b)(3), and the manner in which the borrowers attempt to invoke it.
 
 Section 2202a(b)(3) provides that
 
 11
 No qualified lender may foreclose or continue any foreclosure proceeding with respect to any distressed loan before the lender has completed any pending consideration of the loan for restructuring under this section.
 
 
 12
 It is not entirely clear whether the borrowers seek to assert the bank's failure to comply with the mandate of Sec. 2202a(b)(3) as an equitable defense to the foreclosure proceeding, or whether they seek to enforce the section affirmatively against the bank. To the extent that they seek to assert noncompliance with Sec. 2202a(b)(3) as a defense, the denial of the stay is not appealable under the collateral order rule because it is neither completely separate from the merits of the action nor effectively unreviewable on appeal. To the extent that the borrowers seek affirmatively to enforce the provisions of Sec. 2202a(b)(3) by means of the motion for a stay, they are precluded from doing so based on the rationale underlying this circuit's holding in Harper v. Federal Land Bank, 878 F.2d 1172 (9th Cir.1989) (borrowers have no private right of action to enforce the Agricultural Credit Act of 1987), and based on the language of the section itself, which does not purport to bind state courts (or federal courts sitting in diversity), but is directed to qualified lenders.[6]
 
 
 13
 The borrowers characterize Sec. 2202a(b)(3) as a "mandatory statutory stay" provision. While we agree that its language clearly prohibits lenders from initiating or continuing foreclosure proceedings before they have "completed any pending consideration of the loan for restructuring," neither the section itself nor any other section of the Act suggests that it operates directly on a state court foreclosure proceeding or that a borrower can enforce the provision in that setting. Nor do the borrowers cite any provisions of Montana law that would allow or require importation of the requirements of a federal statute directed at a federal agency into state foreclosure actions.
 
 
 14
 In Harper we refused to imply a private right of action under the Act that would permit borrowers to file federal actions to enjoin state foreclosure proceedings. We found that Congress intended administrative remedies provided by the Act to be the exclusive remedy for borrowers. 878 F.2d at 1176. We reiterated in Harper that "foreclosure proceedings ... [are] traditionally controlled by state law." 878 F.2d at 1177. While some states permit borrowers "to allege the failure to afford restructuring rights as an affirmative defense to foreclosure," id., and indeed Montana appears to be such a state,[7] whether and how noncompliance with Agricultural Credit Act requirements constitute a defense to foreclosure, and whether such noncompliance might afford a basis for granting a stay under the relevant Montana law, are matters of state law.[8] The borrowers can no more directly enforce Sec. 2202a(b)(3) in a state court foreclosure proceeding than they can enforce it by way of a private right of action in federal court.
 
 
 15
 It appears that borrowers can, however, assert the bank's failure to comply with Sec. 2202a(b)(3), along with its failure to comply with any other procedural or substantive requirements of the Act, as an equitable defense to foreclosure. See note 7, supra. Should the bank prevail in the foreclosure proceeding, the borrowers will then be able to appeal the final judgment, including the district court's rulings on such issues as whether the 45-day notice provision of Sec. 2202a(b)(2) operates to create a binding deadline on the borrowers; whether the borrowers' application was untimely or incomplete; whether the borrowers properly were denied review pursuant to Sec. 2202; and whether the bank complied with its own regulations regarding cooperation with the borrower. Because the validity of the borrowers' defense (and its component questions) can effectively be reviewed following a final judgment, Gulfstream 's third prong precludes us from reviewing the district court's order based on Sec. 1291.
 
 
 16
 We turn now to the borrowers' latter assertion of jurisdiction based on Sec. 1292(a)(1).[9] "An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under Sec. 1292(a)(1)." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 279, 108 S.Ct. 1133, 1138, 99 L.Ed.2d 296 (1988). The Enelow-Ettelson doctrine, which provided the principal exception to that rule, was abolished by the Court in Gulfstream. Id. at 282-83, 108 S.Ct. at 1144. Although Gulfstream states that 28 U.S.C. Sec. 1292(a)(1) will "continue to provide appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have ' "serious, perhaps irreparable, consequence," ' " id. at 287-88, 108 S.Ct. at 1142-43 (citations omitted), those circumstances are not met in this case. Since the requested stay addresses only the progress of the litigation before the court, i.e., the foreclosure proceeding, it is questionable whether the order denying the stay can properly be considered to be an order having "the practical effect of ... denying [an] injunction[ ]." More importantly, the borrowers fail to demonstrate that serious or irreparable consequences will result from the denial of a stay.
 
 
 17
 The serious and arguably irreparable consequence of foreclosure without an opportunity for restructuring as mandated by the Act can take place only as a result of the very proceeding the borrowers seek to stay--a proceeding in which the borrowers will have a full opportunity to argue their entitlement to restructuring under the Agricultural Credit Act. Therefore, if the borrowers are entitled to such restructuring, or are entitled to additional process before being denied restructuring, either the district court or this court on appeal of the final judgment will mandate such process or restructuring. Thus, the only injury the borrowers will suffer as a result of being denied the stay and forced to proceed through the foreclosure process is the cost of the foreclosure proceeding itself, an injury which is neither "serious" nor "irreparable."[10]
 
 
 18
 Because the borrowers' only colorable assertion of the Agricultural Credit Act of 1987--i.e., as an equitable defense--will be effectively reviewable following entry of final judgment in the foreclosure action, and because the denial of a stay does not threaten serious or irreparable consequence, we lack jurisdiction to review the district court's order denying a stay. Accordingly, the appeal is DISMISSED.
 
 
 
 [1]
 For the sake of simplicity, we refer to all defendants-appellants collectively as "the borrowers."
 
 
 [2]
 Although the underlying case is a state law foreclosure proceeding, it has been removed to federal district court pursuant to 28 U.S.C. Sec. 1444 because the United States is a defendant in the foreclosure
 
 
 [3]
 The letter stated that the bank had been advised that the Act did not apply to loans already in foreclosure, but that the bank had decided to extend the Act's provisions to such loans anyway. The question of whether the Act's provisions extend to loans already in foreclosure is not before us in this appeal
 
 
 [4]
 The borrowers allege that they had requested but been denied this material earlier. The borrowers finally received the appraisals on May 17, 1988 and the loan history on June 21, 1988
 
 
 [5]
 Section 1291 provides, in pertinent part: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court."
 
 
 [6]
 Were the borrowers able to import Sec. 2202a(b)(3) into the state court proceeding as some kind of mandatory stay provision, the district court's denial of such a stay would be appealable under Gulfstream because the question of the borrowers' entitlement to a stay would be entirely separate from the merits of the main action and would be effectively unreviewable on appeal from a final judgment. That is, once the foreclosure proceeded to judgment so as to allow normal appeal under the final judgment rule, the borrowers' claim that they were entitled to a stay of the action would be moot
 
 
 [7]
 Both parties assert that Montana would recognize the bank's failure to comply with the Act or related bank regulations or policies as an equitable defense to foreclosure. While the Montana Supreme Court has not decided the question, the North Dakota Supreme Court held in Federal Land Bank of St. Paul v. Overboe, 404 N.W.2d 445 (N.D.1987), that a federal land bank's failure to comply with forbearance statutes and policies would give rise to an equitable defense. Three Montana federal district court decisions, applying Montana state law and attempting to discern the result that the Montana Supreme Court would reach on the issue, have approved the Overboe rule that a limited scope defense is available based on such noncompliance. Farm Credit Bank of Spokane v. Debuf, 5 Mont.Fed.Rep. 139, 757 F.Supp. 1106 (1990); Farm Credit Bank of Spokane v. Nilsen, 5 Mont.Fed.Rep. 29 (1990); Farm Credit Bank of Spokane v. Parsons, 4 Mont.Fed.Rep. 491 (1990). Under Overboe, the relevant inquiry for the court in evaluating the borrowers' defense of noncompliance with restructuring provisions is 1) whether the creditor considered the borrower's qualifications for restructuring in accordance with its procedures, and 2) whether in its decision not to grant restructuring or forbearance, the bank "abused its discretion by acting in an arbitrary, capricious, unreasonable or unconscionable manner." 404 N.W.2d at 450
 
 
 [8]
 Indeed, the very nomenclature "defense" suggests not that the borrowers can invoke Act provisions to bring the foreclosure process to a halt, but that the bank's noncompliance with the Act will be taken into account during the course of the foreclosure proceeding
 
 
 [9]
 Section 1292(a)(1) provides, in pertinent part: "[T]he courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."
 
 
 [10]
 We note that should the borrowers have need to appeal, they will be entitled to apply for a stay of judgment pending appeal in the same manner as any other appellant so as to avoid harm resulting from enforcement of the judgment prior to resolution of the appeal. Fed.R.App.P. 8