878 F.2d 1172
 58 USLW 2029
 Myron S. HARPER, Jane Harper, Plaintiffs-Appellees,
v.
FEDERAL LAND BANK OF SPOKANE, a corporation; Willamette
Production Credit Association, a corporation in liquidation;
Kenneth P. Krueger, in his capacity as President and Chief
Executive Officer of the Federal Land Bank of Spokane,
Defendants-Appellants.
 Nos. 88-4033, 88-4120.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 4, 1989.
Decided June 27, 1989.
 
 Richard A. Edwards, James N. Westwood, Miller, Nash, Wiener, Nash, Wiener, Hager & Carlsen, Portland, Or., John D. Albert, Churchill, Leonard, Brown & Donaldson, Salem, Or., for defendants-appellants.
 James T. Massey, Farmers' Legal Action Group, Inc., Sisters, Or., Michael J. Martinis, Webb and Martinis, Salem, Or., for plaintiffs-appellees.
 Jocelyn F. Olson, Asst. Atty. Gen., State of Minn., St. Paul, Minn., for amici curiae.
 Richard W. Brunette, Jr., Marsha D. Galinsky, Sheppard, Mullin, Richter & Hampton of Los Angeles, Cal., for amicus curiae Western Farm Credit Bank.
 Appeal from the United States District Court for the District of Oregon.
 Before TANG, SKOPIL and KOZINSKI, Circuit Judges.
 SKOPIL, Circuit Judge:
 
 
 1
 The primary issue on appeal is whether there is an implied private right of action to enforce the Agricultural Credit Act of 1987 ("1987 Act"), 12 U.S.C. Secs. 2001-2279aa-14. The district court held that the 1987 Act creates such an action and found that the Federal Land Bank ("FLB") and Willamette Production Credit Association ("WPCA") violated the statute. Harper v. Federal Land Bank of Spokane, 692 F.Supp. 1244, 1252-53 (D.Or.1988). We hold there is no implied private right of action for the 1987 Act. We reverse.
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 Myron and Jane Harper ("the Harpers") own and operate a farm in Oregon encumbered by mortgages held by FLB and WPCA. The Harpers began having difficulty with loan repayments in the early 1980's. In May 1984 WPCA rejected the Harpers' loan renewal request and filed a foreclosure action against them five months later in state court. In February 1985 the Harpers filed a complaint against numerous institutions and officers of the Farm Credit System seeking, inter alia, an order enjoining WPCA's state foreclosure proceeding. The district court denied the Harpers' motion for an injunction and dismissed the action. Harper v. Farm Credit Admin., 628 F.Supp. 1030, 1033-34 (D.Or.1985).
 
 
 3
 After several continuances of the state court's foreclosure trial, the Harpers entered into a settlement agreement to restructure the WPCA debt. Instead of performing the settlement, however, the Harpers filed a Chapter 11 bankruptcy petition on May 30, 1986. In July 1986 WPCA obtained relief from the automatic stay, and the state foreclosure action was reinstated.
 
 
 4
 In September 1986 FLB obtained relief from the automatic stay and filed a foreclosure complaint against the Harpers in January 1987. In June 1987 the Harpers asked FLB about possible forbearance on their FLB loans. FLB supplied them an application form and requested financial information but received neither an application for forbearance nor financial data from the Harpers until April 21, 1988.
 
 
 5
 On September 3, 1987 the state court entered a default judgment of foreclosure in favor of FLB. On October 9, 1987 WPCA secured a judgment of foreclosure by stipulation. FLB scheduled a sheriff's sale for November 17, 1987. On November 13, 1987 the Harpers filed a Chapter 12 bankruptcy petition, thereby staying the sheriff's sale. In February 1988, on the Harpers' motion, the bankruptcy court dismissed the petition. The sheriff's sale was held in March 1988.
 
 
 6
 The Harpers thereafter moved to set aside the judgments. The state court found that the judgments were authorized by the Harpers' prior attorney, denied the Harpers' motion to set aside the judgments, and ruled that the order confirming the sale could be entered.
 
 
 7
 The Harpers then filed this action in federal district court seeking an injunction barring continuation of the state court process. The district court granted a preliminary injunction and enjoined FLB and WPCA (together "the Lenders") from transferring the property pending resolution of the Harpers' claims. After a court trial the district court held that the Lenders violated the 1987 Act. Harper, 692 F.Supp. at 1253. The court concluded that the Lenders had a duty under federal law to "weigh the costs of foreclosure against the costs of restructuring prior to proceeding with the sheriff's sale." Id. The Lenders were enjoined from evicting the Harpers from their property. Id. The district court also issued an order directing the parties to apply to state court for an order rescinding the sheriff's sale.
 
 
 8
 On appeal, the Lenders contend the 1987 Act does not provide an implied private right of action. Alternatively, they argue (1) they have not violated the 1987 Act; (2) the actions taken by the district court were prohibited by the Anti-Injunction Act, 28 U.S.C. Sec. 2283 (1982); (3) the district court did not have the authority to command the parties to stipulate in state court to an order rescinding a completed sheriff's foreclosure sale or to restrain the purchasers from taking possession of the property; and (4) the district court's findings as to WPCA are clearly erroneous. We decide only that there exists no private right of action and therefore we do not reach the alternative arguments.
 
 DISCUSSION
 I.
 
 9
 In Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087-88, 45 L.Ed.2d 26 (1975), the Supreme Court set forth four factors to determine whether Congress intended to imply a private cause of action in a federal statute.
 
 
 10
 First, is the plaintiff one of the class for whose especial benefit the statute was enacted--that is, does the statute create a federal right in favor of plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?
 
 
 11
 Id. at 78, 95 S.Ct. at 2088 (internal quotations and citations omitted) (emphasis in original). Subsequent to Cort, the Court has indicated that the second and third factors are determinative of whether a court should imply a private right of action from a statutory scheme. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 145, 105 S.Ct. 3085, 3091-92, 87 L.Ed.2d 96 (1985); see also In re Washington Public Power Supply Sys. Sec. Litig., 823 F.2d 1349, 1354 (9th Cir.1987) (en banc) ("a failure to satisfy these two factors is determinative"). Moreover, it is now clear that the focal point of our inquiry is the second factor--the intent of Congress. See Thompson v. Thompson, 484 U.S. 174, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988) (unless congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, a private remedy simply does not exist). Nevertheless, we look to all four factors "[a]s guides to discerning that intent." Id.
 
 1. Especial Benefit of Plaintiffs
 
 12
 The district court concluded that the Harpers satisfied the first factor as "one of the class for whose especial benefit the statute was enacted" because Title I of the 1987 Act, entitled "Assistance to Farm Credit System Borrowers," established broad rights for borrowers and mandatory duties for lenders. Harper, 692 F.Supp. at 1247. We agree that one of the purposes of the 1987 Act was to provide borrowers with certain limited rights, including the right to restructure distressed loans and the right of first refusal by the previous owner when the lenders elect to sell acquired property. We look at the overall purpose of the 1987 Act, however, and conclude that the major impetus for the legislation was the financial crisis of the Farm Credit System. "[The bill] is necessary to reassure both American farmers and our financial markets that the Farm Credit System will remain a viable entity next year and into the 21st century." 133 Cong.Rec.S. 16831 (Dec. 1, 1987) (remarks of Sen. Leahy). "[The bill] has two major objectives: First, provide meaningful assistance to the system; and second, minimize to the greatest extent possible exposure to the Federal budget." 133 Cong.Rec.S. 16833 (Dec. 1, 1987) (remarks of Sen. Boren).
 
 
 13
 Our conclusion that the financial crisis of the Farm Credit System was the primary purpose of the 1987 Act is further reinforced by the fact that a borrower's right to restructure a delinquent loan is limited to situations in which the cost of restructuring is less than or equal to the cost of foreclosure. 12 U.S.C. Sec. 2202a(e)(1). In other words, restructuring is not always available to borrowers but is limited to situations involving no additional expense to the system.
 
 2. Legislative Intent
 
 14
 The district court concluded that the legislative history supports an implied right of action, even though Congress considered enacting an express private right of action and later deleted that section. Harper, 692 F.Supp. at 1247-49. The court reasoned that the express provision was eliminated because some members of Congress "were under the misperception that the farmers already had the right to sue." Id. at 1248. Senators Pryor, Cochran, Fowler, and Sanford, for example, sought to include an express private right of action "to affirm that borrowers have a right to sue." S. 1156, 100th Cong. 1st Sess. 133 Cong.Rec. 6105 & 6107 (May 6, 1987). One version of the Senate bill included an express private right of action. S. 1665, 100th Cong., 1st Sess., 133 Cong.Rec. 11750 (August 7, 1987).
 
 
 15
 A proposed House bill also contained an express private right of action. Representative Watkins said he believed that "the right to sue is implied within the bill itself" but an express provision was necessary "to make sure that there is no question that the borrower has that right." H.R. 3030, 100th Cong., 1st Sess., 133 Cong.Rec. 7638, 7692 (September 21, 1987). In response to a question whether farmers currently had the right to sue, Representative Watkins responded that in some states they did, and Representative De La Garza said "I think basically they have that right now." Id. at 7693.
 
 
 16
 Prior to a conference committee on the bills, Senator Burdick questioned whether the House bill's inclusion of a private right of action "actually restricts the right to sue." S. 1665, 100th Cong. 1st Sess., 133 Cong.Rec. 16993, 16995 (December 2, 1987). Senator Boren responded with a plan to "oppose that House provision in the conference committee." Id. The Senate opposed the House provision and it was deleted from the final 1987 Act. H.R. 3030, 100th Cong., 1st Sess., 133 Cong.Rec. 11820 (December 18, 1987).
 
 
 17
 The district court concluded from that legislative history that "[b]oth the House and Senate intended that the borrower have the right to bring a private action in federal court to enforce the Act." Harper, 692 F.Supp. at 1248, citing Cannon v. University of Chicago, 441 U.S. 677, 711, 99 S.Ct. 1946, 1965, 60 L.Ed.2d 560 (1979) ("the relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the law was.") (internal quotations omitted). It is abundantly clear, however, that there existed no implied private right of action under the various predecessor statutes or regulations in force prior to the 1987 Act. See, e.g., Bowling v. Block, 785 F.2d 556, 557 (6th Cir.) (Farm Credit Act of 1971), cert. denied, 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986); Smith v. Russellville Prod. Credit Ass'n, 777 F.2d 1544, 1548 (11th Cir.1985) (Farm Credit Act of 1971 and regulations); Redd v. Federal Land Bank of St. Louis, 661 F.Supp. 861, 864 (E.D.Mo.1987) (1985 amendments), aff'd, 851 F.2d 219, 223 (8th Cir.1988); Mendel v. Production Credit Ass'n, 656 F.Supp. 1212, 1216 (D.S.D.1987) (1985 amendments), aff'd, 862 F.2d 180, 182 (8th Cir.1988). But cf. Federal Land Bank of St. Paul v. Overboe, 404 N.W.2d 445, 449 (N.D.1987) (allowing use of 1985 amendments as an affirmative defense in state foreclosure action).
 
 
 18
 "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 759-60, 88 L.Ed.2d 859 (1986). Here, an express private right of action was proposed in both houses of Congress but deleted in the final conference version. " 'Because the conference report represents the final statement of the terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent.' " Department of Health and Welfare v. Block, 784 F.2d 895, 901 (9th Cir.1986) (quoting Demby v. Schweiker, 671 F.2d 507, 510 (D.C.Cir.1981)). We conclude that the district court gave inappropriate weight to remarks made by members of Congress. See Regan v. Wald, 468 U.S. 222, 237, 104 S.Ct. 3026, 3035, 82 L.Ed.2d 171 (1984). "To permit what we regard as clear statutory language to be materially altered by such colloquies, which often take place before the bill has achieved its final form, would open the door to the inadvertent, or perhaps even planned, undermining of the language actually voted on by Congress and signed into law by the President." Id.
 
 
 19
 Even if the congressional statements are ambiguous on the creation of a private right of action, our review of the administrative remedies provided by the 1987 Act convinces us that Congress intended administrative review to be the exclusive remedy. See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 15, 101 S.Ct. 2615, 2623-24, 69 L.Ed.2d 435 (1981) ("In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."); see also Karahalios v. National Fed'n of Fed. Employees, Local 1263, --- U.S. ----, 109 S.Ct. 1282, 1287, 103 L.Ed.2d 539 (1989) (administrative remedies provided by statute shows clear congressional intent not to provide a private cause of action).
 
 
 20
 Here the administrative scheme provides for "Credit Review Committees" which must include farmer-director representatives. 12 U.S.C. Sec. 2202(a). The applicant/borrower is entitled to prompt written notice of any action taken with respect to the denial or reduction of a loan or the denial of loan restructuring. 12 U.S.C. Sec. 2201(a). If a loan application or loan restructuring proposal is denied, the applicant/borrower is entitled to learn the reason for the denial and to receive notice of the applicant's/borrower's right to seek review of the adverse decision. 12 U.S.C. Sec. 2201(b). The applicant/borrower has the right to seek review of the adverse decision and to bring counsel or other representation to seek a reversal of the denial. 12 U.S.C. Secs. 2202(b) & (c). In addition, 12 U.S.C. Sec. 2261-2274 grants extensive enforcement powers to the Farm Credit Administration ("FCA"). The FCA has the power to issue cease and desist orders against any institutions or persons who violate the statute or applicable regulations, as well as the power to suspend or remove Farm Credit System officers and directors. 12 U.S.C. Secs. 2266(b), 2264. The FCA is further empowered to assess civil and criminal sanctions to enforce these provisions. 12 U.S.C. Secs. 2268(a), 2269.
 
 
 21
 The Harpers nevertheless contend that the remedies available are not comprehensive enough to preclude an implied private cause of action under the 1987 Act. First, they claim there is no procedure for filing charges or for compelling FCA to commence an investigation. Second, they argue that FCA's enforcement apparatus is inadequate to enforce the borrower's rights. Third, they assert that FCA's authority to issue temporary cease and desist orders is limited to violations likely to cause insolvency and that FCA's issuance of permanent cease and desist orders is extremely time consuming. Finally, they argue there is no provision in the statute guaranteeing any remedy for the individual borrower; thus borrowers will be without a remedy for lender violations.
 
 
 22
 We do not dispute that an implied private right of action would enhance the administrative remedies provided under the 1987 Act. We have previously rejected, however, enhancement as a factor in the analysis of implied remedies. Le Vick v. Skaggs Companies, Inc., 701 F.2d 777, 778-79 (9th Cir.1983). Moreover, the argument that a private right of action must be implied or else borrowers will be without a remedy overlooks the apparent right in some states of a borrower to allege the failure to afford restructuring rights as an affirmative defense to foreclosure. See Federal Land Bank of St. Paul v. Bosch, 432 N.W.2d 855, 858-59 (N.D.1988) (allowing use of 1986 regulations as an affirmative defense in state foreclosure action); Overboe, 404 N.W.2d at 449 (allowing use of 1985 Act as an affirmative defense in state foreclosure action). But see Federal Land Bank of St. Louis v. Hopmann, 658 F.Supp. 92, 94 (E.D.Ark.1987) (rejecting defense).
 
 3. Consistency with Legislative Purpose
 
 23
 The district court concluded that a private right of action strengthens the Farm Credit System because it forces lenders to make cost effective decisions concerning the possibility of restructuring loans. Harper, 692 F.Supp. at 1249. While we do not disagree with that conclusion, we do conclude that the primary purpose of the 1987 Act was to restore financial integrity to the Farm Credit System. Allowing a private right of action undermines that objective by involving the Farm Credit System in costly litigation. Although the statute provides borrowers with limited rights, the major purpose of the 1987 Act was to provide financial stability to the Farm Credit System at a minimum cost to taxpayers. 133 Cong.Rec.S. 16833 (Dec. 1, 1987) (remarks of Sen. Boren).
 
 4. Cause of Action Relegated to State Law
 
 24
 The district court concluded that the rights created under the 1987 Act were exclusively federal because Congress's goal of keeping farmers on their land is not a traditional state concern. Harper, 692 F.Supp. at 1249. The district court, however, addressed only sections 2202a(c) and (d) regarding loan restructuring and ignored section 2202a(b)(3) which prohibits lenders from continuing foreclosure proceedings. We have held that the latter is traditionally controlled by state law. See Rank v. Nimmo, 677 F.2d 692, 697 (9th Cir.) (no private right of action under the Veterans Administration Home Loan Guarantee Program to set aside a foreclosure since mortgage foreclosures are traditionally a matter of state law), cert. denied, 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982).
 
 5. Summary
 
 25
 We conclude that none of the four Cort factors supports an implied private cause of action under the 1987 Act. Because Congress provided administrative remedies to borrowers and we find the legislative history to be ambiguous, "we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." Middlesex, 453 U.S. at 15, 101 S.Ct. at 2623. "The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." California v. Sierra Club, 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981). Thus we join the several other courts which have also rejected an implied right of action under the 1987 Act. See, e.g., Wilson v. Federal Land Bank of Wichita, No. 88-4058-R (D.Kan. Jan. 30, 1989) (1989 WL 12731); Neth v. Federal Land Bank of Jackson, 717 F. Supp. 1478 (S.D.Ala. 1988); Zajac v. Federal Land Bank of St. Paul, No. 88-A3-88-115 (D.N.D. July 19, 1988) 1988 WL 166 118, appeal pending, No. 88-5353 (8th Cir.). But see Griffin v. Federal Land Bank of Wichita, 708 F.Supp. 313 (D.Kan.1989) (allowing a private right of action but finding no violation); Leckband v. Naylor, 715 F. Supp. 1451 (D.Minn. May 17, 1988) (allowing a private right of action to enforce right of first refusal), appeal pending, No. 88-5301 (8th Cir.); Martinson v. Federal Land Bank of St. Paul, No. A2-88-31 (D.N.D. Apr. 21, 1988) (same), appeal pending, No. 88-5202 (8th Cir.).II.
 
 
 26
 The district court sua sponte declared that the Harpers also presented a 42 U.S.C. Sec. 1983 claim. Harper, 692 F.Supp. at 1251-52. We agree that an independent section 1983 inquiry is required because "there could well be federal rights enforceable under section 1983 which are not enforceable by means of a private right of action under the statute creating them." Boatowners and Tenants Ass'n, Inc. v. Port of Seattle, 716 F.2d 669, 674 (9th Cir.1983). We conclude, however, that section 1983 does not provide a cause of action to remedy the violations alleged by the Harpers. Courts have refused to apply section 1983 to plaintiffs alleging violations of the Farm Credit Act of 1971 and the 1985 amendments. See Schroder v. Volcker, 646 F.Supp. 132, 135 (D.Colo.1986) (plaintiff did not allege that defendants were state actors or that state foreclosure laws permitted sale of plaintiffs' property without notice and opportunity to contest the sale; therefore "plaintiffs have failed to allege that the defendants acted under color of state law"), aff'd, 864 F.2d 97, 98-99 (10th Cir.1988); Brekke v. Volcker, 652 F.Supp. 651, 654-55 (D.Mont.1987) (same). Furthermore, the fact that a state permits the use of foreclosure procedures and subsequent sheriff sales as the execution of a judgment is not sufficient to constitute state action. Earnest v. Lowentritt, 690 F.2d 1198, 1202 (5th Cir.1982); see also Roudybush v. Zabel, 813 F.2d 173, 177 (8th Cir.1987) ("State policy is not implicated when an injured party claims that a private party has violated a constitutional post-judgment procedural statute in the course of depriving the injured party of property."); Kolb v. Naylor, 658 F.Supp. 520, 524 (N.D.Iowa 1987) ("use of state law to foreclose is not sufficient to allege a claim under section 1983"). Thus we hold that the Harpers have not alleged and may not maintain a section 1983 action.
 
 
 27
 REVERSED.