In re JARRETT RANCHES, INC., Debtors.

JARRETT RANCHES, INC., Jarrett Elevators, Inc.; Donald D. and Jeannine Jarrett, husband and wife; and Ronald R. and Jacqueline Jarrett, husband and wife, Plaintiffs,

v.

FARM CREDIT BANKS OF OMAHA, Production Credit Association of the Midlands and Federal Land Bank Association of Aberdeen, Defendants.

Bankruptcy No. 88–10117.

Adv. No. 89–1001.

United States Bankruptcy Court, D. South Dakota.

Aug. 16, 1989.

See also, Bkrtcy., 107 B.R. 969.

Norman J. Baer, Minneapolis, Minn., for plaintiffs.

Brent A. Wilbur, Pierre, S.D., for defendants.

## MEMORANDUM DECISION

IRVIN N. HOYT, Chief Judge.

This Memorandum Decision will dispose of Farm Credit Bank of Omaha's (FCBO) motion that a judgment on the pleadings be entered in its favor and against plaintiff/debtors Jarrett Ranches, Inc. et al. (Jarretts). Jarretts request declaratory and injunctive relief against FCBO and its related entities claiming that FCBO violated the provisions of the Agricultural Credit Act of 1987, Pub.L. No. 100–233, 101 Stat. 1568–1718 (1987) and particularly 12 U.S.C. § 2219a. FCBO moved for judgment on the pleadings asserting that no private right of action exists to enforce the provisions of the Act.

The nature of this proceeding requires a brief recitation of the relevant facts. In December 1988, Donald and Jeannine Jarrett, Ronald and Jacqueline Jarrett and Jarrett Elevators, Inc. each conveyed their interest in approximately 32,000 acres of property located in North and South Dakota to Jarrett Ranches, Inc. Pursuant to a stipulation, Jarrett Ranches, Inc., Jarrett Elevators, Inc., and the individual Jarretts conveyed certain portions of the real estate to the Production Credit Association of the Midlands, and the remainder was conveyed to FCBO.

Jarretts, who are debtors under Chapter 11 of the Bankruptcy Code, later brought this adversary proceeding against FCBO claiming that FCBO violated the Act by failing to give notice to the "previous own-

er" of the real estate of its right of first refusal. Jarretts also claim that a waiver of their right of first refusal was void as violative of § 2219a(b) of the Act, that FCBO failed to appraise the property at its fair market value, and that FCBO's proposed public auction of the property denies them their right of first refusal. Jarretts seek an order requiring a new appraisal of the real estate, injunctive relief to prevent the sale or public offering of the property until they are given an opportunity to exercise that right of first refusal, and a declaration that FCBO's failure to use an independent fee appraiser and failure to follow 12 C.F.R. § 614.4220 is violative of the Act. FCBO argues that even if Jarretts' claims are true, judgment must be granted in FCBO's favor because no private right of action exists under the Act.

§ 2219a provides in salient part:

(a) General rule. Agricultural real estate that is acquired by an institution of the system as a result of a loan foreclosure or a voluntary conveyance by a borrower (hereinafter in this section referred to as the "previous owner") who, as determined by the institution, does not have the financial resources to avoid foreclosure (hereinafter in this section referred to as "acquired real estate") shall be subject to the right of first refusal of the previous owner to repurchase or lease the property, as provided in this section.

(b) Application of right of first refusal to sale of property. (1) Election to sell and notification. Within 15 days after an institution of the System first elects to sell acquired real estate, or any portion of such real estate, the institution shall notify the previous owner by certified mail of the owner's right—

(A) to purchase the property at the appraised fair market value of the property, as established by an accredited appraiser; or

(B) to offer to purchase the property at a price less than the appraised value.

(5) Rejection of offer of previous owner. (A) Duties of institution. An institution of the System that rejects an offer from the previous owner to purchase the property at a price less than the appraised value may not sell the property to any other person—

(i) at a price equal to, or less than, that offered by the previous owner; or

(ii) on different terms and conditions than those that were extended to the previous owner,

without first affording the previous owner an opportunity to purchase the property at such price or under such terms and conditions.

(B) Notice. Notice of the opportunity in subparagraph (A) shall be provided to the previous owner by certified mail, and the previous owner shall have 15 days in which to submit an offer to purchase the property at such price or under such terms and conditions.

.      .      .      .      .

(d) Public offerings. (1) Notification of previous owner. If an institution of the System elects to sell or lease acquired property or a portion thereof through a public auction, competitive bidding process, or other similar public offering, the institution shall notify the previous owner, by certified mail, of the availability of the property. Such notice shall contain the minimum amount, if any, required to qualify a bid as acceptable to the institution and any terms and conditions to which such sale or lease will be subject. (2) Priority. If two or more qualified bids in the same amount are received by the institution under paragraph (1), such bids are the highest received, and one of the qualified bids is offered by the previous owner, the institution shall accept the offer by the previous owner.

As it currently stands, there is conflicting opinion concerning whether the Act allows a private right of action. The Ninth Circuit in *Harper v. Federal Land Bank of Spokane,* 878 F.2d 1172 (9th Cir.1989), employing the factors set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), held that no such right exists. *Wil-*

*son v. Federal Land Bank of Wichita,* No. 88–4058–R, slip op., 1989 WL 12731 (D.Ks. January 30, 1989) also held that no such right exists. In the Eighth Circuit, two district court cases have held that such a right does exist. *See Leckband v. Naylor,* 715 F.Supp. 1451 (D.Mn.1988) and *Martinson v. Federal Land Bank of St. Paul,* 725 F.Supp. 469 (D.N.D.1988). These cases were both appealed to the United States Court of Appeals for the Eighth Circuit, but were dismissed on May 9, 1989. Thus, the Eighth Circuit has yet to provide guidance on this issue.

As was used in *Harper* and *Leckband,* a *Cort v. Ash* analysis will help to discern whether a private right of action exists under the Act. *Cort* set forth four factors to determine whether Congress has intended to imply a private cause of action in a federal statute. The factors are as follows:

First, is the plaintiff one of the class for whose especial benefit the statute was enacted, i.e., does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? Finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the state, so that it would be inappropriate to infer a cause of action based solely on federal law? *Cort,* 422 U.S. at 78, 95 S.Ct. at 2087.

The second and third factors enunciated in *Cort* have been held to be determinative of whether a court should imply a private right of action from a statutory scheme. *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Further, *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), now makes it clear that the focal point of this inquiry is the second factor—congressional intent.

As did *Harper* and *Leckband,* this Court will utilize a *Cort* analysis to determine whether a private right of action exists under the Act. The analysis of the *Harper*

and *Leckband* Courts may prove instructive and thus will also be considered herein.

### 1. *Especial benefit of the plaintiffs.*

The first factor to be considered is whether Jarretts are a member of the class for whose especial benefit the statute was enacted.

The *Harper* Court noted that one of the purposes of the Act "was to provide borrowers with certain limited rights, including the right to restructure distressed loans and the right of first refusal by the previous owner when the lenders elect to sell acquired property." 878 F.2d at 1174. However, *Harper* went on to note that a proper inquiry requires one to focus on the overall purpose of the Act, concluding that the "major impetus for the legislation was the financial crisis of the Farm Credit System" rather than the plight of distressed borrowers. *Id.*

Judge Devitt, in *Leckband*, focused solely on borrower's rights and noted that a prior owner of farm land acquired by a Farm Credit System institution is "clearly a person for whose special benefit § 1229a [sic] was enacted." at 1454.

This Court's reading of the statute leads it to conclude, as did the *Harper* Court, that the primary purpose of the legislation was to treat the ailing Farm Credit System. However, the Act does provide certain specific borrower's rights, including a right of first refusal. Any benefit from exercising that right would inure primarily to the borrower, with little if any benefit to the System. The Court thus concludes that while the legislation was largely intended to shore up the Farm Credit System, a previous owner is likewise a member of the class for whose especial benefit the Agricultural Credit Act of 1987 was enacted.

### 2. *Legislative intent.*

The second factor to consider is whether Congress has given any indication to create or deny this type of remedy. As noted earlier, *Thompson, supra*, holds that this factor should be given the most weight.

Both the *Harper* and *Leckband* Courts outlined the legislative history of the Act with specific emphasis on the issue of whether a private right of action was intended. It appears from congressional reports that a provision to explicitly grant a private right of action was considered in both the House and Senate chambers. *See* S.1665, 100th Cong., 1st Sess., 133 Cong. Rec. 11750 (August 7, 1987) and H.R. 3030, 100th Cong., 1st Sess., 133 Cong.Rec. 7638 (September 21, 1987), U.S.Code Cong. & Admin.News 1978, p. 2723. However, the explicit provision to grant such a right was deleted because some members of Congress were under the perception that borrowers already had the right to sue, *Harper v. Federal Land Bank of Spokane*, 692 F.Supp. 1244 at 1248 (D.Or.1988), and there was concern that the inclusion of a private right of action could actually restrict one's right to sue. S. 1665, 100th Cong., 1st Sess., 133 Cong.Rec. 16993 (Statement of Senator Burdick). As a result, the Conference Committee deleted any reference to a private right of action prior to final passage of the bill. H.R. 3030, 100th Cong., 1st Sess., 133 Cong.Rec. 11820 (December 18, 1987).

Bearing in mind the legislative history of the Act, the *Harper* Court noted that it was clear that no private right of action existed under any predecessor statutes or regulations in force prior to the 1987 Act. The Court further stated that as a matter of statutory construction, Congress should have specifically provided for any intended private right of action given judicial determinations which held that no such right previously existed. *See Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Concluding, the *Harper* Court held that the colloquies contained in the legislative history should not be given an inordinate amount of weight and that Congress intended that an administrative review process should be the exclusive remedy under the Act.

The *Leckband* Court came to the opposite conclusion. Relying on the legislative history, Judge Devitt concluded that Congress did intend to provide for a private

right of action but feared making such right explicit could be counterproductive.

This Court concludes that it was the intent of Congress to provide a private right of action. The fact that an explicit provision to that effect was drafted is evidence that Congress considered the issue. The fact that the provision was later deleted must be tempered by examining the reason for such deletion. It appears from the legislative history that members of Congress did not delete the provision because they fundamentally disagreed with the concept of providing a private right of action. Rather, operating from the misperception that such an implied right already existed,[1] see H.R. 3030, 100th Cong., 1st Sess., 133 Cong.Rec. 7638, 7693 (Statement of Representative de La Garza) (September 21, 1987), members of Congress feared that the explicit provision of a private right of action could actually restrict one's right to sue under the Act. Deciding to leave well enough alone, no explicit provision was provided. Based on this series of events, this Court concludes that Congress did intend that a private right of action should exist under the Act.

3. *Consistency with legislative purpose.*

The third factor for this Court to consider is whether implying a private right of action is consistent with the underlying purposes of the legislative scheme.

The *Harper* Court found that providing a right of action was inconsistent with the Act's purpose of restoring financial integrity to the Farm Credit System. The *Leckband* Court found that such right was consistent with the Act's purpose of providing certain specific rights to borrowers. Obviously, the conclusion reached by each Court on this factor was directly related to its earlier consideration of whether the legislation was intended to impart a special benefit on the Farm Credit System, borrowers, or both.

Having earlier concluded that plaintiffs such as Jarretts are beneficiaries under the Act, the Court likewise concludes that the provision of a private right of action is consistent with the purposes thereof. To conclude otherwise would result in Jarretts having as their only remedy the administrative review process and enforcement powers of the Farm Credit Administration. *See* 12 U.S.C. §§ 2261–2274. These cease and desist powers, as provided by the Act, are designed to detect and remedy unsound practices of Farm Credit System institutions and are inappropriate to effectively protect the restructuring and first refusal rights afforded to the System's borrowers. Simply put, the time table and scope of the Act's enforcement powers, if followed by Jarretts, would immerse them in an administrative quagmire through which they could never receive an appropriate remedy. The ability to issue cease and desist orders or suspend, remove or replace institution officials, as contemplated by the Act's enforcement powers, is of little practical benefit to Farm Credit System borrowers such as the Jarretts.

This case is a prime example of how the proposed administrative remedy would fail to redress injuries to a Farm Credit System borrower. The following time line illustrates how the Jarretts would fare if they utilized the administrative process:[2]

| Date | Sale Plan | Administrative Process |
|------|-----------|------------------------|
| Feb. 3 | FCBO gives Jarretts its notice of intent to sell[3] | |

1. For example, the Eighth Circuit held that the 1985 amendments to the Farm Credit Act of 1971 did not provide a private right of action *for damages. See Redd v. Federal Land Bank of St. Louis,* 851 F.2d 219 (8th Cir.1988). However, the Eighth Circuit never reached the issue of whether a private right of action for *injunctive*

*relief* could be implied thereunder. *Redd* at 219.

2. For purposes of this illustration, the Court does not consider whether FCBO's method of sale would pass muster under the statute.

| Mar. 5 | Jarretts make offer | |
| Mar. 20 | FCBO rejects Jarretts offer | |
| Mar. 30 | | Jarretts apply for a cease and desist order; Farm Credit Administration considers the application and notices a hearing [4] |
| April 3 | Sale begins | |
| April 5 | Sale ends–59 tracts sold | |
| May 1 | | FCA holds hearing [5] |
| June 15 | | FCA issues ruling [6] |
| July 15 | | FCA order becomes effective [7] |

In a best-case scenario, where all of the parties would cooperate in expediting the administrative procedure, at least 30 days would pass between the time of the sale and the effective date of FCA's order. In a worst-case scenario, where the statutory time limitations were fully utilized by all parties, more than six months would elapse between the sale date and the effective date of the order. In the Court's example, which contemplates the passage of a reasonable amount of time, more than 100 days would pass from the time that the Jarrett land was sold (April 5) until the FCA order could take effect (July 15). While the FCA order could, in theory, require FCBO to reconsider Jarretts' offer and/or perhaps re-do the sale, the practical effect of such an order would create chaos. The purchasers of the 59 separate tracts, who would have possessed the land in excess of three months, may have to be recalled and might have to go through the bidding process again. This would obviously present serious questions concerning the rights of the bona fide purchasers of each of the 59 parcels. Quiet title actions would abound. A title examiner's nightmare would ensue. Given this administrative "remedy", the only alternative available to quickly and effectively protect the rights of Farm Credit System borrowers is to seek relief from the Courts.

3. 12 U.S.C. § 2219a(b) provides the time frame for (1) an institution of the Farm Credit System to give notice to the previous owner of its intent to sell (15 days after first electing to sell); (2) the previous owner to submit an offer to purchase (30 days after receipt of institution's notice to sell); and (3) the institution to accept or reject the previous owner's offer (15 days after receipt of offer).

4. This 10 day period (March 20—March 30) is not provided by the statute. This period would allow Jarretts to consider their next move, apply to the FCA for a hearing, allow the FCA to consider the merits of Jarretts' application and notice a hearing on Jarretts' application. Obviously, in the "real world" the FCA's consideration of the application could take much longer. Also note that Jarretts are not eligible for a temporary cease and desist order under 12 U.S.C. § 2262 because such order is intended for use where a bank's solvency is threatened rather than to protect the rights of Farm Credit System borrowers.

5. This 30 day period (March 30—May 1) is in conformance with 12 U.S.C. § 2261(a) which requires that a hearing be held no less than 30 days nor later than 60 days after service of notice, absent a request for an earlier date by one of the parties.

6. Per 12 U.S.C. § 2266 the FCA has up to 90 days to reach its final decision. The Court has afforded 45 days for the FCA to consider Jarretts' claim for purposes of this example.

7. 12 U.S.C. § 2261(b) provides that a cease and desist order becomes effective 30 days after receipt by the concerned parties, except where such order is issued by consent. For purposes of this example, the Court is assuming that the FCA would rule in Jarretts' favor and that FCBO would not consent to issuance of the order.

4. *Cause of action relegated to state law.*

Finally, this Court must consider whether this is an area traditionally relegated to state law, thus making it inappropriate to rely upon federal law for the inference of a private right of action.

South Dakota law makes no provision for the protection of § 2219a rights. It thus appears that any rights afforded under § 2219a of the Act are governed exclusively by federal law.

The Court's analysis concerning the existence of a private right of action for the relief here sought under the Agricultural Credit Act of 1987 leads it to conclude that such a right may be implied. While this Court partially agrees with the Ninth Circuit's analysis of this issue, it believes that its conclusion is too narrowly drawn and fails to recognize and appreciate the predicament that distressed Farm Credit System borrowers currently face. Accordingly, FCBO's motion for a judgment on the pleadings hereby is denied. This is a core proceeding under 28 U.S.C. § 157(b). This Court will enter an order denying FCBO's motion.