Donald **WALKER**, Barbara **Walker**, Plaintiffs,

v.

The **FEDERAL LAND BANK OF ST. LOUIS**, Defendant.

No. 88–3315.

United States District Court, C.D. Illinois, Springfield Division.

Nov. 27, 1989.

Donald Walker, Butler, Ill., for plaintiffs.

John E. Evans, Evans & Evans, Hillsboro, Ill., for defendant.

## OPINION

RICHARD MILLS, District Judge:

We deal here with the Agricultural Credit Act of 1987.

As involved here, that Act has been interpreted by both the Eighth and Ninth Circuits, but not our Seventh Circuit. Thus we will address this case in this manner.

Plaintiffs Donald and Barbara Walker, appearing *pro se*, filed a "civil rights complaint" against the Defendant in conjunction with a motion to preliminarily enjoin a state court proceeding between the parties. The facts giving rise to the suit are not in dispute, although the legal effect of those facts is disputed.

## FACTS

The Walkers borrowed some $103,600 from the Federal Land Bank of St. Louis, now known as the Farm Credit Bank of St. Louis (hereinafter referred to FCB) in December of 1978. The note signed by the Walkers included, at the bottom, the following words:

> For value received, the undersigned hereby guarantees the payment of the within note, according to the terms thereof, both as to principal and as to interest.

This short paragraph was signed by the manager of the Federal Land Bank Association of Hillsboro (hereinafter FLBH).

Apparently all did not go well with the Walkers' agricultural endeavors, because the FCB, on May 5, 1988, forwarded to the Walkers a copy of FCB's distressed loan restructuring policy and an application to restructure their loan. The Walkers were to complete these forms and return them by June 22, 1988. Instead, though, the Walkers returned to the FCB the forms which were in most respects wholly incomplete; the distressed loan restructuring application information requests were responded to with the question "Does this comply with H.R. 3030?" This question refers to the House Resolution which was later crafted into the Agricultural Credit Act of 1987, Part C of which is entitled "Rights of Borrowers; Loan Restructuring"—in other words, the Walkers were obliquely questioning whether the restructuring application complied with their rights under the Agricultural Credit Act of 1987 (hereinafter 1987 Act). Also forwarded with this incomplete restructuring application were some ten pages of requests for information from the FCB.

On June 24, 1988, in response to the Walkers' submissions, FCB sent a second letter apprising the Walkers of their right to apply to have their distressed loan restructured, and noted the FCB's receipt of the incomplete application. This second letter detailed the information necessary to be supplied in order for consideration of the restructuring application, and allowed the Walkers until July 5, 1988, to comply prior to the commencement of foreclosure proceedings on the loan.

The Walkers never responded, though, and so on July 6, 1988, FCB informed the Walkers that their distressed loan restructuring application was denied for being incomplete, and that commencement of foreclosure proceedings was imminent. This prompted the Walkers to send a letter to FCB requesting a credit review committee reconsideration of the denial of the restructuring application and for the names of three approved appraisers; this letter was dated July 12, 1988. On July 21, 1988, FCB responded by letter that a credit review committee hearing was only available when a completed application was submitted. Additionally, FCB responded to the Walkers' request for the names of three approved appraisers by noting that such appraisers are only to be made available by the FCB in the event restructuring is denied on the merits, whereas the Walkers'

application was denied because it was not completed.

## PROCEDURE

Following the above actions, FCB commenced foreclosure proceedings in the Illinois state courts. This prompted the Walkers to file the instant suit, and also to seek preliminary injunctive relief to stay the state court proceedings pending resolution of their federal cause of action. The original complaint filed by the Walkers, dubbed a "civil rights complaint," raised four different grounds why the Walkers believed the FCB had infringed upon their federal constitutional rights in bringing the foreclosure action.

After oral argument, this Court denied the Walkers' request for preliminary injunctive relief in part on the ground that the complaint had little likelihood of succeeding on the merits. Specifically, we found that the complaint, framed in terms of 42 U.S.C. § 1983, would likely fail for want of any state action.

■ As we further noted, neither the mere institution of a foreclosure proceeding nor the use of a state's tribunals establish state action; by the same token, the FCB is, itself, not a state actor, and thus is not a "person" for purposes of § 1983. We also denied injunctive relief on the grounds that no private remedy exists under the 1987 Act, and also that any preliminary injunctive relief was likely barred by virtue of the Anti–Injunction Act, 28 U.S.C. § 2283.

Following their unsuccessful bid to enjoin the state court proceeding in our Court, the Walkers filed a bankruptcy petition and thus automatically stayed the foreclosure proceeding. That petition, though, was dismissed, and the FCB immediately filed a motion for summary judgment. The Walkers responded to this motion by moving to dismiss without prejudice, but we denied that motion on authority of Rule 41(a)(2) of the Federal Rules of Civil Procedure. The Walkers then responded to the motion for summary judgment and asked for leave to file an amended complaint. The proposed amended complaint raises es-

sentially the same factual basis as their original complaint, but this time the pleading is framed in terms of a declaratory judgment action, and is premised upon the Walkers' view that the 1987 Act confers a private right of action which gives this Court the power to declare that the FCB did not comply with the terms of that Act and to order the FCB to retrace its steps and to comply.

The FCB has objected to the Walkers' proposal that we allow them to amend their complaint. Nevertheless, the FCB also has renewed its motion for summary judgment as to the proposed amended complaint.

■ We consider first the Walkers' motion to file an amended complaint. It is clear that the original complaint could not possibly have established liability against the FCB on the basis of § 1983. *See Harper v. Federal Land Bank of Spokane,* 878 F.2d 1172, 1178 (9th Cir.1989). The motion to file an amended complaint, hence, was a wise move on the Walkers' part. The proposed amended complaint arises from the same factual backdrop as the original complaint, and so FCB is not blindsided by the new complaint, as is borne out by the fact that FCB has already moved for summary judgment as to the new complaint. Hence, the Walkers' motion to file an amended complaint is allowed, and we shall only consider FCB's motion for summary judgment with respect to this new complaint.

We now consider FCB's motion.

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere exist-

ence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Applying this standard, the Court now turns to the case at bar.

FCB, in its summary judgment motion, makes two arguments; *first,* it argues that we have no jurisdiction to hear this case because the 1987 Act confers no private remedy, and *second,* FCB argues that even if a private remedy is available in some cases, it is not available here since FCB followed all procedures required. We agree with FCB on both contentions, and we so rule in the alternative.

## THE 1987 ACT

When the FCB first filed its motion for summary judgment, no federal court of appeals had decided whether the 1987 Act conferred a private right of action on borrowers. Shortly thereafter, though, the Ninth Circuit decided the *Harper* case, 878 F.2d 1172, which found that the 1987 Act did not confer such a private right of action. The issue was not entirely clear, though, because several earlier district court cases had resolved the issue with the opposite conclusion, and certain of those cases were pending appeal. Very recently, the decision in *Zajac v. Federal Land Bank of St. Paul,* 887 F.2d 844 (8th Cir. 1989), was issued in which the majority decided that the 1987 Act did, in fact, confer a private right of action; one judge, however, was persuaded by the *Harper* court's reasoning and filed a dissenting opinion to that effect.

The waters are therefore substantially muddied, and we are forced to choose between these two non-controlling appellate court cases. After careful consideration of these cases, we must side with the four appellate court judges who have determined that no private right of action exists, and we respectfully decline to follow the two judges who held otherwise in *Zajac.*

We begin our analysis of the *Harper* and *Zajac* cases by noting that a prime point of dispute between those cases was the identity of the dominate purpose of the 1987 Act. In the years leading up to the enactment of the 1987 Act, farmers throughout the United States were having difficulty making ends meet, and so many were defaulting on their Federal Land Bank loans. In turn, the large number of defaults was causing a severe financial strain upon the Farm Credit System, which prompted the Farm Credit System lenders to take a more and more strict approach in default situations. The lenders in the Federal Land Bank system, in fact, on occasion wholly ignored procedures which might be favorable to borrowers, and would, for instance, foreclose on loans even though the cost of foreclosure was greater than any costs to the system that restructuring the loan might engender. Against this backdrop, Congress enacted the 1987 Act. The *Harper* case contends that the dominate purpose of the 1987 Act was to stave off financial crisis in the Farm Credit System by requiring lenders to consider whether restructuring loans might be less financially taxing than would be foreclosure. The *Zajac* majority, in contrast, saw the dominate purpose of the 1987 Act to be to benefit farmers who were being wrongfully foreclosed upon.

The question of the dominate purpose of the 1987 Act is fundamentally important in deciding whether a private right of action can be implied in the 1987 Act because, as the *Harper* case noted, the pertinent considerations for such a decision outlined in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), require, *inter alia,* that the Court determine whether the plaintiff is included within a class "for whose *especial* benefit the statute was enacted." More importantly, though, as both the *Harper* and *Zajac* courts implicitly and

explicitly recognized, the primary consideration is whether Congress had any intention of conferring such a right when it enacted the statute in question.

With these thoughts in mind, this Court must respectfully part company with both courts on the question of the primary objective of the 1987 Act. Both courts have recognized the dual purpose of the 1987 Act—that is, to shore up the financial structure of the Farm Credit System, and to benefit financially strapped farmers. These two considerations, though, are in this situation nearly mutually exclusive. Had Congress solely been concerned with assisting financially troubled farmers, it could have enacted legislation much more beneficial to that group. Likewise, simply to assist the Farm Credit System did not require the extent of the borrowers' rights which were included in the 1987 Act. It is therefore clear that the 1987 Act was carefully crafted to balance these two competing interests in order to achieve the dual goals as much as possible. The approaches taken by both the *Harper* and *Zajac* courts disregard the dual nature of the 1987 Act, and each court focuses exclusively upon one side of the argument to determine whether implying a private right of action works for or against the Congressional intent.

Our view of the class to be benefited by the 1987 Act, then, is that both farmers and the Farm Credit System were meant to be benefited by the statute. Framed in these terms, resolution of whether a private right of action should be implied is relatively simple. Both the *Harper* and *Zajac* courts referred to committee reports and floor debates to bolster their views. The end result, though, is that Congress carefully crafted the 1987 Act in order to achieve two opposing goals. Implying a private right of action, when Congress considered and rejected such a proposal, would almost certainly disrupt the careful balance struck in the act.

The *Harper* court noted that Congress had included with the 1987 Act's borrower's rights provisions a fairly complete administrative remedy provision. The 1987 Act provides, for instance, that credit review committees be established, which will include farmer-director representatives, to review denials of loan restructuring applications or loan applications. More importantly, the 1987 Act provides the Farm Credit Administration with broad powers to enforce the provisions of the Act, including the right to issue cease and desist orders against parties not complying with the borrower remedies provisions, the power to suspend or remove officers and directors of lenders who fail to comply with the 1987 Act, and even the right to assess civil and criminal sanctions to enforce the provisions of the Act.

The *Zajac* court played down the importance of these administrative remedies by pointing out that borrowers cannot initiate remedial measures by the Farm Credit Administration, and that the Farm Credit Administration has not shown a willingness to use its powers to further borrowers' interests. But clearly the *Zajac* court missed the point. The important factor is that Congress considered the appropriate means of enforcing the Act's provisions and chose not to confer a private right of action. That the Farm Credit Administration has been lax in complying with Congressional intent is of no moment; our current task is to determine the Congressional intent in enacting the 1987 Act, and whether further remedial measures are required is a question for the legislative branch, not this branch.

These same considerations apply to the two courts' determinations as to whether implying a private right of action would be consistent with the legislative purpose. The *Harper* court found that implying a private right of action would thwart the legislative purpose in enacting the 1987 Act. In contrast, the *Zajac* court determined that implying a private right of action would actually further the Congressional aim of ameliorating the farmers' economic plight. It seems once again to this Court that the *Harper* conclusion is correct. The *Zajac* court's view would forward the interests of the farmers to the total exclusion of the interests of the Farm Credit System. Congress considered these

matters when it enacted the legislation—the excerpts from the legislative history cited by both courts clearly establish that Congress considered this question from every angle. Nevertheless, Congress chose to not confer such a right upon farmers.

We are not privy, of course, to the reason why Congress, as a whole, reached that decision. We might surmise, though, that Congress was well aware of the propensity of landowners being foreclosed upon to seek every avenue of escape possible. It is a fact of common experience that even those persons who legally should be foreclosed upon will resort to litigation to stave off creditors. Congress may well have decided that a private right of action under the 1987 Act would generate too many meritless lawsuits filed simply to postpone the inevitable, and that these lawsuits, in addition to those with merit, would pose too heavy a financial burden upon the already strapped Farm Credit System. At any rate, whatever the precise reasons were, it is clear that the 1987 Act was carefully crafted to closely balance the competing interests of the Farm Credit System and the American farmers. Implying a private right of action would assuredly disrupt that close balance, and hence would clearly thwart the Congressional purpose.

This Court therefore adopts the view taken by the *Harper* court and the dissenting judge of the *Zajac* court, and we find that no private right of action can be implied from the 1987 Act. Hence, we determine that we have no power to render any declaratory judgment, since no case or controversy exists over which we have jurisdiction.

### THE APPLICATION

■ Even if we are in error as to a private right of action, though, the Walkers still must lose this motion for summary judgment. The essence of their lawsuit is that they did not fill out the application for loan restructuring because the FLBH was a co-maker to the note, but FCB had not requested a restructuring application from the FLBH. In support, the Walkers cite 12 C.F.R. § 618.8325(a)(1), governing Farm Credit Administration procedures, which states "For purposes of this section, the following definitions shall apply: (1) 'Borrower' means any signatory to a loan contract who is either primarily or secondarily liable on such contract, including guarantors, endorsers, cosigners or the like."

The Walkers' argument is devoid of merit, and there is no reason apparent to this Court why they should not have filled out the loan restructuring application. As the FCB notes, § 618.8325(a)(1) applies only to that section, which concerns "Disclosure of loan documents," and says nothing about restructuring applications.

■ The Walkers also argue that according to Illinois state law, the FLBH is not an accommodation party or guarantor because it does not meet the four-part test to determine that relationship's existence as established in the case *Aurora Firefighter's Credit Union v. Harvey*, 163 Ill.App.3d 915, 114 Ill.Dec. 873, 516 N.E.2d 1028 (1987). But the face of the note itself lists the FLBH as a guarantor; furthermore, in the posture of this case that relationship is a question of federal law. In this regard, 12 U.S.C. § 2202a requires that qualified loans be restructured rather than foreclosed upon. However, § 2202a(a)(5) states that

> [t]he term "loan" means a loan made to a farmer, rancher, or producer or harvester of aquatic products, for any agricultural or aquatic purpose and other credit needs of the borrower, including financing for basic processing and marketing directly related to the borrower's operations and those of other eligible farmers, ranchers, and producers or harvesters of aquatic products.

It is clear that the FLBH is not the recipient of a "loan" within the meaning of the 1987 Act. Hence, the FLBH is not a borrower entitled to seek restructuring under that Act. Indeed, the FLBH's status as either an accommodation party, guarantor or a co-maker within the meaning of Illinois commercial law would be relevant only with respect to FCB's right to proceed against the FLBH on the note. That relationship has nothing to do with the Walk-

ers' failure to complete the distressed loan restructuring application.

■ This case might be in a different posture on the merits had the Walkers completed the restructuring application to the best of their ability; if FCB had then denied the restructuring application, and denied the Walkers' request for a credit review committee reconsideration and for the appointment of independent appraisers, a colorable claim may have been made out that the FCB was not complying with the 1987 Act's edicts. In light of what actually transpired, though, the record clearly indicates that the FCB acted with creditable tolerance. The FCB supplied the Walkers with restructuring applications and allowed them ample time within which to complete the forms. When the forms were returned uncompleted, the FCB again notified the Walkers of the right to complete the forms, and provided them an extension of time in which to do so. Since the Walkers returned incompleted applications, these did not amount to "application[s] for restructuring" as that term is defined by the 1987 Act:

The term "application for restructuring" means a written request—

(A) from a borrower for the restructuring of a distressed loan in accordance with a preliminary restructuring plan proposed by the borrower as a part of the application;

(B) submitted on the appropriate forms prescribed by the qualified lender; and

(C) *accompanied by sufficient financial information and repayment projections, where appropriate as required by the qualified lender to support a sound credit decision.*

12 U.S.C. § 2202a(a)(1) (emphasis added).

The Walkers clearly failed to comply with subsection (C), inasmuch as they did not supply any financial information or repayment projections at all with their restructuring application. Additionally, the Walkers failed to comply with subsection (A) by wholly failing to submit a preliminary restructuring plan as a part of the application. Hence, the Walkers did not submit to the FCB an application for re-

structuring as that term is used in the 1987 Act. FCB was therefore under no obligation to consider the application pursuant to § 2202a(d)(1), and so in effect the FCB neither affirmed nor denied a restructuring plan since none was submitted. This, in turn, means that no credit review committee reconsideration was required pursuant to 12 U.S.C. § 2202(b)(2), which requires such review only when the lender has denied a restructuring plan. Additionally, § 2202(d)'s independent appraisal provisions were not called into play because no credit review committee reconsideration was required. Hence, we can see no way in which the FCB failed to comply with the procedural requirements of the 1987 Act.

## SUMMARY

We shall summarize our rulings.

1. First, we side with the *Harper* case and conclude that no private right of action exists to force compliance with the 1987 Act.

2. Nevertheless, even if we are incorrect in this first decision, we hold alternatively that the Walkers have failed to establish any factual basis that would legally entitle them to a judgment in their favor. They have complained that the FLBH was a co-maker on their note but was not required to submit a loan restructuring application as they were.

3. In the first place, though, even if the Walkers are correct as to the FLBH's liability on the note, the 1987 Act does not require the FLBH to submit a restructuring application; indeed, the FLBH's liability on the note is relevant only as to the FCB's rights to proceed against the FLBH, but not as to the duty of the FLBH to submit a restructuring application, and certainly not as to the Walkers' responsibility for submitting their own applications.

4. The result of the Walkers' failure to submit completed restructuring applications, therefore, was that the FCB was not required to convene a credit review committee, nor was that committee required to submit to the Walkers the names of three independent appraisers.

5. The FCB complied with all procedural requirements necessary under these circumstances, and so the Walkers' claim that the procedures were not followed is wholly devoid of merit.

*Ergo,* the Walkers' motion to file an amended complaint is ALLOWED, but to no avail because the Defendant's motion for summary judgment is also ALLOWED, and this case is hereby DISMISSED.

Case CLOSED.