813 P.2d 371

**FEDERAL LAND BANK OF SPOKANE, Plaintiff–Respondent,**

v.

**Bryant and Karen WRIGHT, husband and wife, Defendants–Appellants,**

and

**Interstate Federal Land Bank Association, Defendant.**

**No. 18168.**

Court of Appeals of Idaho.

July 1, 1991.

Bryant Wright and Karen Wright (argued), pro se.

Green, Service, Gasser & Kerl of Pocatello, for respondent. Kay E. Moore (argued).

SWANSTROM, Judge.

Bryant and Karen Wright, husband and wife, appeal from a district court order denying their motion under I.R.C.P. 60(b) to set aside a judgment. The sole issue is whether the district judge abused his discretion by denying the Wrights' motion to set aside a summary judgment on the grounds of excusable neglect. For reasons set forth in this opinion, we affirm.

On May 25, 1979, the Federal Land Bank of Spokane loaned the Wrights $112,000 to be repaid in thirty-five annual installments. The note was secured by a mortgage on real property, a farm located in Madison County, Idaho. The loan amount and the annual repayment obligation were later modified along with the repayment date. The Wrights failed to pay an installment which came due on October 1, 1985. On May 20, 1986, the bank declared a default under the terms of the note and mortgage and accelerated all sums due and owing on the loan. That same day, a letter was sent to the Wrights informing them of the bank's intention to foreclose. Meanwhile, the bank's legal department in Spokane, Washington, began preparing a foreclosure complaint.

On June 13, 1986, the Wrights filed a chapter 13 petition in bankruptcy court. Upon receiving notice of the bankruptcy proceeding, the bank ceased all foreclosure activity. Several "adequate protection payments" were made by the Wrights pursuant to the bankruptcy reorganization plan. The Wrights later converted their chapter 13 bankruptcy to a chapter 11 bankruptcy, and then filed a petition for relief under chapter 12 of the bankruptcy code. The chapter 11 plan was never confirmed because the Wrights chose to refile under the newly enacted chapter 12 plan, which provided relief for farmers. The Wrights were again required to make adequate protection payments under the chapter 12 reorganization plan. However, because the payments were not timely made, the bankruptcy court lifted the automatic stay, allowing the bank to proceed with the foreclosure action. Several months later, the bankruptcy court dismissed the Wrights' chapter 12 bankruptcy petition.

On February 12, 1988, the bank sent a letter to the Wrights notifying them that they had forty-five days from the date of that letter to send the bank a restructure application under the newly enacted Agricultural Credit Act of 1987.[1] On March 28, 1988, the Wrights mailed a restructure application to the Rexburg, Idaho, office of Farm Credit Services (an office of the bank), where it was received on March 29. The previous day, the legal department of the bank in Spokane had mailed to the bank's attorney in Rexburg, Idaho, a complaint to file against the Wrights for foreclosure of its mortgage. Without checking with the bank's local service office to determine whether a restructure application had been received, the attorney filed the complaint on March 31.[2] However, once the attorney was notified of the restructure application, all foreclosure activity stopped pending the outcome of that application.

On April 11, 1988, the bank denied the restructure request because the Wrights' cash flow was not sufficient to service the loan and because the cost to restructure the loan exceeded the cost of foreclosure.

1. The Agricultural Credit Act of 1987 became effective January 6, 1988. Agricultural Credit Act of 1987, Pub.L. No. 100–233, title I, § 102(a), 101 Stat. 1574 (codified at 12 U.S.C. § 2202a (1988)).

2. The bank's attorney later candidly admitted to the district court that when he received the letter with the legal documents from Spokane he had overlooked a request that he check with the bank's local service office before filing the complaint.

Four days later, the Wrights submitted more documentation to the bank, but their request was again denied. The bank then mailed a notice to the Wrights stating that they were entitled to have the denial reviewed by a credit review committee. The Wrights accepted this offer, and a meeting was held with the committee members on April 25, 1988. Following the second denial of their restructure request, the Wrights were served with a summons and complaint. In response, an attorney filed a notice of appearance for the Wrights on June 13, 1988. Seventeen days later, the bank countered with a motion for summary judgment. However, the hearing on summary judgment was postponed because the Wrights had filed a second chapter 12 bankruptcy petition in early August of 1988.

On October 20, 1988, the bankruptcy court lifted the automatic stay. This allowed the bank to renew its motion for summary judgment, and the hearing date was reset to December 5, 1988. The Wrights and their attorney failed to appear and summary judgment was entered against the Wrights. The Wrights filed a motion under I.R.C.P. 60(b) to set aside the summary judgment. After a hearing was held on this motion, the district judge requested that a second hearing be held to determine whether the bank had complied with the statutory procedure and had acted in good faith in evaluating the Wrights' restructure application. Following a second hearing by another district judge, an order was entered denying the Wrights' motion to set aside the summary judgment. This appeal followed.

The Wrights' motion to set aside the summary judgment was based on mistake or excusable neglect on their part. I.R.C.P. 60(b)(1). The Wrights maintain that they did not appear at the summary judg-

ment hearing because they believed that an agreement had been reached with the bank whereby the bank would accept a deed in lieu of foreclosure. The Wrights also assert that they have a defense to the foreclosure action based on two alleged violations of the Agricultural Credit Act of 1987 by the bank. First, the Wrights submit that the bank violated the Act when it filed a complaint against them two days after receipt of the Wrights' restructure application.[3] Second, the Wrights argue that the Act was violated by the bank's policy of simultaneously reviewing a restructure application through the bank's local service office while the legal department of the bank in Spokane was preparing a foreclosure complaint. The Wrights contend that this was improper because the lender must give forty-five days notice to the borrower that the borrower's loan may be suitable for restructuring, prior to beginning the foreclosure process.[4]

The district judge treated the Rule 60(b) motion as a motion to set aside a "default judgment" because the Wrights did not appear at the hearing and because no pleadings had been filed by the Wrights. The only document on file in the clerk's office was a notice of appearance dated June 13, 1988. With this in mind, the district judge stated that, to set aside a default judgment, the moving party must meet two requirements: the Wrights must satisfy at least one of the criteria of Rule 60(b)(1); and they must plead facts which, if established, would constitute a meritorious defense to the action. *Hearst Corp. v. Keller*, 100 Idaho 10, 592 P.2d 66 (1979).

The district judge did not discuss the first requirement. Instead, he went directly to the second part of the test. The district judge stated that, even considering the case law most supportive of the

---

3. 12 U.S.C. § 2202a(b)(3) provides:

No qualified lender may foreclose or continue any foreclosure proceeding with respect to any distressed loan before the lender has completed any pending consideration of the loan for restructuring under this section.

4. 12 U.S.C. § 2202a(b)(2) provides:

Not later than 45 days before any qualified lender begins foreclosure proceedings with respect to a loan outstanding to any borrower, the lender shall notify the borrower that the loan may be suitable for restructuring and that the lender will review any such suitable loan for restructuring, and shall include with such notice a copy of the policy and the materials described in paragraph (1).

Wrights' contention, they had not shown facts which would constitute a meritorious defense to the action. *See Federal Land Bank of St. Paul v. Overboe*, 404 N.W.2d 445 (N.D.1987). After making this finding, the district judge denied the Wrights' motion to set aside the summary judgment. Because we hold that Rule 60(b)(1) is the dispositive issue, we need not decide whether an alleged violation of the Agricultural Credit Act of 1987 constitutes a meritorious defense to the action.[5]

Rule 60(b)(1) authorizes relief from a judgment or order for mistake, inadvertence, surprise or excusable neglect. The Wrights argue that their belief in an agreement with the bank constitutes mistake or excusable neglect on their part and justifies that the judgment be set aside. However, for the purpose of simplifying our discussion, we will use the term "excusable neglect" rather than "mistake of fact," because the test is the same. *Avondale on Hayden, Inc. v. Hall*, 104 Idaho 321, 658 P.2d 992 (Ct.App.1983).

The decision to grant or to deny relief pursuant to a Rule 60(b) motion is within the sound discretion of the trial court, and, absent a manifest abuse of that discretion, such a decision ordinarily will not be disturbed on appeal. *Johnston v. Pascoe*, 100 Idaho 414, 599 P.2d 985 (1979). The district court will be deemed to have acted within its discretion where: (1) the court made findings of fact which are not clearly erroneous; (2) the court applied the proper legal criteria to the facts; and (3) the court's legal conclusions follow logically from the application of those criteria to the facts found. *Avondale on Hayden, Inc. v. Hall, supra.*

Here, the district judge made no findings of fact regarding any "agreement" whereby the Wrights would deed the property back to the bank. Moreover, the district judge did not decide whether the Wrights' explanation constituted excusable neglect. Therefore, we must form our own impressions from the record and exercise our own discretion in deciding whether the summary judgment should be set aside on the grounds of excusable neglect. *Johnson v. Pioneer Title Co. of Ada County*, 104 Idaho 727, 662 P.2d 1171 (Ct. App.1983).

To obtain relief from the summary judgment on the basis of excusable neglect, the moving party must show that his conduct was of a type expected from a reasonably prudent person under the same circumstances. *Gro–Mor, Inc. v. Butts*, 109 Idaho 1020, 712 P.2d 721 (Ct.App.1985). When making this decision, the court must consider each case in light of its own unique facts. *Baldwin v. Baldwin*, 114 Idaho 525, 757 P.2d 1244 (Ct.App.1988). Moreover, in doubtful cases a standard of liberality rather than strictness must be applied. *Johnson v. Pioneer Title Co. of Ada County, supra.* The Wrights have failed to show that a reasonably prudent person would not have attended the summary judgment hearing.

Karen Wright has pointed to evidence in the record which she argues supports her belief that an agreement had been reached between the parties prior to the summary judgment hearing. However, her own testimony reveals that the deed in lieu of foreclosure discussions were not finalized. The record is clear that nothing definite could be agreed upon by the parties until all the liens against the property were removed. Likewise, the affidavit of Bryant Wright reveals that the parties were only earnestly talking about a deed in

---

**5.** Our research of the record and of the legal authorities from other jurisdictions cited to us by the parties support the district judge's conclusion that the Wrights failed to show they had a valid defense to the foreclosure proceedings. The prevailing view of the federal courts is that, by enacting a comprehensive scheme with an integrated system of procedures for enforcement, Congress clearly intended administrative review to be the exclusive remedy available to borrowers for alleged violations of the Agricultural Credit Act. The result is that state courts are precluded from creating additional legal or equitable remedies. *See, e.g., Zajac v. Federal Land Bank of St. Paul*, 909 F.2d 1181 (8th Cir.1990); *Harper v. Federal Land Bank of Spokane*, 878 F.2d 1172 (9th Cir.1989) *cert. denied*, 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990); *Griffin v. Federal Land Bank of Wichita*, 902 F.2d 22 (10th Cir.1990).

**36**

lieu of foreclosure, and that they did not want to pursue that option until after the Wrights had been discharged in bankruptcy. This understanding of the events leading up to the summary judgment hearing was corroborated by Grant Boehme, the local credit officer for the bank, who had been assigned to review the Wrights' restructure application. Just as revealing is the fact that no documents evidencing such an agreement were ever signed by the parties.

From our examination of the record, it appears that the parties were willing to pursue a deed in lieu of foreclosure; however, no such agreement was ever achieved. Eventually, the bank clearly manifested its intent to proceed on the summary judgment motion. The correspondence between the parties does not indicate that the settlement negotiations misled the Wrights into allowing summary judgment to be entered against them.[6] *See, e.g., Olson v. Kirkham,* 111 Idaho 34, 720 P.2d 217 (Ct.App.1986).

We hold that the Wrights' explanation for failing to appear at the hearing falls short of excusable neglect. Their conduct was not what might be expected of a reasonably prudent person under the same circumstances. *Id.* Accordingly, we hold that the district judge did not abuse his discretion in denying the motion to set aside the summary judgment. The order of the district court denying the motion to set aside the summary judgment is affirmed. Costs and attorney fees awarded to respondent Federal Land Bank pursuant to I.C. § 12–120 in an amount to be determined under I.A.R. 40 and 41.

WALTERS, C.J., and SILAK, J., concur.

---

**6.** On the morning of the summary judgment hearing, the court contacted counsel for the Wrights by telephone. In that conversation, counsel stated that he was not going to appear at the hearing and that the Wrights had no defense to the motion for summary judgment. The Wrights have not argued that their counsel's actions constitute excusable neglect.