Joseph N. LILLARD and Rebecca
Lillard, Appellants,

v.

FARM CREDIT SERVICES OF MID-
AMERICA, ACA, Appellee.

No. 90-CA-1891-MR.

Court of Appeals of Kentucky.

Nov. 15, 1991.

Rehearing Denied Jan. 24, 1992.

Discretionary Review Dismissed by
Supreme Court June 16, 1992.

J. Richard Downey, Franklin, for appellants.

Kevin C. Brooks, Bell, Orr, Ayers and Moore, Bowling Green, for appellee.

Before HOWERTON, McDONALD and STUMBO, JJ.

McDONALD, Judge.

Joseph and Rebecca Lillard have appealed from the summary judgment entered by the Warren Circuit Court in a foreclosure action commenced in 1985 by the appellee, Farm Credit Services of Mid-America (for-

merly, The Federal Land Bank of Louisville, and hereinafter referred to as the "bank"). There is no dispute that the Lillards were in default on a note executed in 1978 for the amount of $232,000, secured by a mortgage on approximately 250 acres of land in Warren County. The Lillards, however, contend that the bank is not entitled to summary judgment, as a fact issue exists concerning the bank's action in depriving them of certain loan restructuring rights granted under the Agricultural Credit Act of 1987, 12 U.S.C. § 2202 *et seq.* We agree.

■ Although the Act was passed and became effective after this suit was commenced, it is clearly applicable to the instant action. Section 2202a(b)(3) provides:

No qualified lender may foreclose *or continue any foreclosure proceeding* with respect to any distressed loan before the lender has completed any pending consideration of the loan for restructuring under this section. (Emphasis added).

The Act provides borrowers whose loans are in distress with certain restructuring rights.[1] A lender must provide a borrower with an opportunity to apply for restructure and, if the request is denied, must give the borrower notice. The borrower then has certain appeal rights which include the right to an independent appraisal. 12 U.S.C. § 2202(b)(1) and (d). The Act requires the bank to restructure a loan unless the cost of restructure exceeds the cost of foreclosure. 12 U.S.C. § 2202a(a)(1)(2) and (3).

In the instant case there was no dispute that the Lillards' loan was in "distress" as defined by § 2202a(a)(3) of the Act. On February 9, 1988, the bank wrote the Lillards and informed them that it had adopted a Loan Restructuring Policy under the 1987 Agricultural Credit Act. It encouraged the Lillards to submit an application "containing the details of the plan" and requested certain pertinent items of information, including financial statements, tax returns, lists of machinery and livestock, and future farm projections. With the letter was information concerning the bank's restructuring policies, including a 45–day time limit for the submission of proposals.

On March 24, 1988, within the 45–day time frame, the Lillards submitted the completed application form and supporting materials to the bank. On March 29, the bank notified the Lillards' attorney that it had received the application for restructure and it sought the attorney's assistance in obtaining additional information and in getting to Lillards to execute several credit reference request forms in order to verify the information provided. This letter did not set out a specific time limitation for the return of this information, nor did the bank have a policy establishing a time limit for submitting supplemental information.[2]

When the bank had not received the additional information within what it considered to be a reasonable time and without further notice to the Lillards, its attorney communicated to counsel for the Lillards as follows:

It has been considerably longer than a month since additional information was requested from Mr. Lillard together with a request for verification forms relative to indebtedness. We have received nothing nor heard further in that regard. My client advises me that they consider that there is no sincere interest in continuing workout negotiations therefore I should file a motion for summary judgment and put it on the docket in order

---

**1.** 12 U.S.C. § 2202a(a)(7) defines "restructuring" as: "The terms 'restructure' and 'restructuring' include rescheduling, reamortization, renewal, deferral of principal or interest, monetary concessions, and the taking of any other action to modify the terms of, or forebear on, a loan in any way that will make it probable that the operations of the borrower will become financially viable."

**2.** Portions of this letter read: "I hope you can appreciate that fact that his [Mr. Lillard] living in another state makes it more difficult to communicate and obtain the facts and information needed to consider any proposal. We would appreciate your sending this information on to Mr. Lillard so that we can receive it back in a timely manner and consider his proposal for a restructure."

that we get the case moving to a conclusion.

Subsequently, the bank also notified the Lillards that no consideration would be given to their application. Since the bank considered the application "incomplete" and never reached the merits of their proposal, it also informed the Lillards that no appeal rights were available to them.

The bank proceeded to seek summary judgment in the foreclosure action and the Lillards filed an amended answer and counterclaim raising the issue regarding the bank's non-compliance with the Act. They contended in that pleading that the bank was estopped from proceeding until it gave proper consideration to their proposal and, if then denied, until it afforded them a proper appeal. The trial court originally denied the motion, holding there was an issue of fact rendering the case "unsuitable" for summary judgment, that being whether the bank acted in good faith in terminating the restructuring process. In a renewed motion for summary judgment, the trial court changed its position and granted the bank's motion, apparently relying on *Harper v. Federal Land Bank of Spokane*, 878 F.2d 1172 (9th Cir.1989), and other cases which hold that there is no private right of action provided to borrowers by the Agricultural Credit Act. The Court ruled from the bench that it believed it could not make an award of damages nor had the authority to grant the relief requested by the Lillards, that is to require the bank to complete the restructure process before being allowed to foreclose. The court further opined that defendants such as the Lillards could not use a state court action as a means to enforce the federal remedies contained in the Act, but instead should have pursued their administrative remedies. Ultimately, a supplemental judgment in the sum of $406,363.75 was entered against the Lillards and the property was ordered to be the subject of a judicial sale.

In making its ruling the trial court apparently overlooked the fact that the bank admittedly refused to afford the Lillards any administrative review of its adverse

action. More importantly, we believe the trial court erred in denying the Lillards the opportunity to assert the deprivation of their rights emanating under the Act as a valid equitable defense to the foreclosure action.

Both parties have extensively briefed the issue of whether the Act provides a private right of action to borrowers. The majority of decisions we have seen indeed hold that borrowers do not have any implied right of action under the 1987 Act. *Harper, supra* at 1177, and cases cited therein, and *Zajac v. Federal Land Bank of St. Paul*, 909 F.2d 1181 (8th Cir.1990) (en banc). *Harper* and *Zajac* concern plaintiffs/borrowers in federal court seeking damages or injunctive relief against lenders for alleged violations of the Act.

■ State court foreclosure proceedings were pending in the *Harper* case and had been completed through the appellate process in *Zajac*. While plaintiffs in these cases were denied relief by the respective federal courts, these opinions indicate that borrowers facing foreclosure may raise a lender's violation of the act in state court as an equitable defense to the suit. As succinctly explained in *Zajac*:

> The Zajacs were completely free to set up, by way of defense to the state-court foreclosure proceeding, their rights ... under the Agricultural Credit Act of 1987.... This federal defense, if ultimately rejected by the State Courts, could have been vindicated by the Supreme Court of the United States in appeal from the Supreme Court of North Dakota. (The remedy now would be by certiorari, rather than by appeal, ... but the point remains that a federal court would be available to vindicate this federal right, if the State Courts should disregard it.) ... The State Courts are open to consider, and in fact are *obligated* under the Supremacy Clause *to consider*, assertions of federal statutory right whether they arise as part of someone's claim or as part of a defense. *Id.* at 1183–1184 (Arnold, concurring) (emphasis added).

*See also, Federal Land Bank of St. Paul v. Overboe,* 404 N.W.2d 445 (N.D.1987).

■ We think it abundantly clear that the foreclosure action in Warren Circuit Court was the logical and appropriate place for the Lillards to assert the bank's failure to afford them those rights specifically designed to prevent foreclosure in the first instance. Failure to allow borrowers to assert such a defense in a state court foreclosure proceeding would essentially render meaningless the rights extended to borrowers under the Act and frustrate the intent of Congress to benefit this nation's struggling farm population.

■ The bank argues that, even if the Lillards are entitled to assert this defense, it is nevertheless entitled to a summary judgment as the application submitted by the Lillards was "woefully inadequate." The bank portrays Mr. Lillard as a sophisticated businessman who demonstrated "bad faith" in not disclosing on his financial statement the identity of a lender of a $3,000,000 indebtedness secured by 327 acres of land in an undisclosed area in Florida. In its brief the bank exclaims, "... we must wonder out loud which party to this action acted arbitrarily, capriciously or unreasonably." The issue presented, however, is clearly one for the jury. The bank abruptly terminated the Lillards restructure process. Whether this was done arbitrarily, or in disregard of its own regulations, and whether it acted in good faith, are questions that a jury is entitled to hear and decide. The record shows that the bank (1) did not give the Lillards a deadline for submitting the additionally requested information; (2) did not initially give them all the necessary forms to enable them to submit a complete application; and (3) denied them any right of appeal. There are sufficient questions about the bank's conduct, regardless of Mr. Lillard's business acumen, to overcome the summary judgment hurdle and allow the issue of the bank's lack of good faith or arbitrariness to be submitted to a jury.

The bank also argues that the trial court was correct in not reconsidering the bank's business decision concerning the Lillard's application. We have no quarrel with the authorities cited by the bank that hold that a trial court is not to second guess a lender's business decision. The *Overboe* case, *supra,* 404 N.W.2d at 449–450, addresses this issue thusly:

> While courts are not qualified to make loan servicing decisions, a court is qualified to determine whether the Bank has established a general policy of forbearance and whether it applied that policy in arriving at its decision to seek foreclosure. Thus, when the forbearance defense has been raised by a borrower in a foreclosure action, the court should initially make findings of fact on whether a forebearance policy has been adopted by the Bank and, if so, whether that policy was applied to the borrower in the case before it.... At this point in the inquiry, the trial court's function ... is to determine only whether the borrower's qualifications were considered by the Bank at all.

The *Overboe* opinion further explains that *if* the bank has considered the borrower's application *on the merits,* the business decision cannot be set aside "unless the borrower can prove that the Bank abused its discretion by acting in an arbitrary, capricious, unreasonable or unconscionable manner." *Id.* (Emphasis added).

The bank in the instant case never considered the Lillards' qualifications and thus, by reversing this case for trial, we are not second-guessing a valid business decision of the bank. As stated before, the issue is solely whether the bank acted in good faith in prematurely terminating the application of the Lillards for restructure and thereby depriving them of the relief afforded by the Act. There is not, we believe, any question that the bank owed the Lillards a duty to act on their application with good faith. *See e.g., Ranier v. Mount Sterling National Bank,* Ky., 812 S.W.2d 154 (1991).

Accordingly, that part of the judgment dismissing the Lillards' counterclaim for damages is affirmed. In all other respects, the judgment of the Warren Circuit Court is reversed and remanded for trial. Should

the jury find for the Lillards, the bank would be required to allow them an opportunity to restructure their loan, as well as pursue all other rights under the Act, before proceeding with the foreclosure.

STUMBO, J., concurs.

HOWERTON, J., dissents in a separate opinion.

HOWERTON, Judge, dissenting.

I must respectfully dissent. The judgment of the Warren Circuit Court should be affirmed in all respects. This case has dragged on far too long for anyone's benefit. Farm Credit Services (FCS) may not be forced to restructure this loan. The majority opinion is partially incorrect in determining that FCS did not provide the Lillards with all of the necessary forms for a complete application, and by any reasonable calculation of time, the Lillards were given every opportunity to provide the bank with requested information which might have allowed for a restructuring.

This foreclosure action was first filed in November 1985. By various means of delay, it was not promptly finalized, and in late 1987, the Agricultural Credit Act was enacted and became effective January 6, 1988. FCS sent to the Lillards a complete package of application forms for restructuring their loan on February 9, 1988. The documents were returned to the bank on March 24, 1988. The Lillards' financial statement was questionable in several respects, and FCS sent them forms to give it authority to verify information on the financial statement. These forms were forwarded to the Lillards on March 29, 1988. No response was received prior to May 13, 1988, and FCS notified the Lillards through their attorney that FCS considered "that there is no sincere interest in continuing workout negotiations...." When the forms to authorize obtaining credit information had not been completed and returned by June 2, 1988, FCS through its attorney notified the Lillards that "no further consideration will be given for the reason that the application for same was never completed."

The Agricultural Credit Act requires a creditor to give the debtor 45 days in which to complete an application for restructuring a loan. The Lillards not only took their original 45 days, but FCS gave them well over 60 additional days in which to merely return some consent forms. At the time this action was pending, FCS had not formulated any time table for requesting supplementary information, but it has since adopted approximately seven days as its standard. Clearly, if forty-five days is adequate for completing the necessary information in a major application, the time FCS allowed the Lillards in this case in which to return the consent forms is magnanimous. There is simply no evidence whatsoever to support a claim of bad faith on behalf of FCS in terminating this restructuring process.

Furthermore, as acknowledged by the majority opinion, a debtor has no private right of action against a lender under the Agricultural Credit Act. Also, there is no rule that requires a creditor to extend a bad loan, or any loan, without cooperation from the debtor in disclosing reasonable and customary credit information and access to verification.

The summary judgment which was finally entered on May 14, 1990, together with the supplemental judgment and order of sale entered July 30, 1990, should be affirmed, the property securing the debt should be sold, and Farm Credit Services should be allowed to collect the remaining indebtedness plus interest from the sale of the property or by deficiency against the Lillards.