**Wm. T. BURGMEIER, a/k/a William T. Burgmeier; et al., Appellants,**

v.

**FARM CREDIT BANK OF ST. PAUL, formerly The Federal Land Bank of St. Paul, f/k/a Federal Land Bank Association of Willmar, Respondent.**

No. C2-92-1804.

Court of Appeals of Minnesota.

April 27, 1993.

Review Denied July 15, 1993.

Lawrence H. Crosby, Clem & Crosby, Minneapolis, for appellants.

Jeff C. Braegelmann, Gislason, Dosland, Hunter & Malecki, New Ulm, for respondent.

Considered and decided by RANDALL, P.J., HUSPENI and PETERSON, JJ.

## OPINION

HUSPENI, Judge.

In challenging a final pretrial judgment, appellant contends the court erred (1) in concluding that the mortgage contract did not incorporate provisions of the Farm Credit Act of 1971 and amendments thereto; (2) in failing to find that respondent breached an implied covenant of good faith; and (3) in holding that no fiduciary relationship existed between appellant and Federal Land Bank Association of Willmar. We affirm in part and reverse in part.

## FACTS

Appellant William T. Burgmeier and his now-deceased wife Rita Franks Burgmeier gave a note and mortgage in 1974 to Federal Land Bank of St. Paul, f/k/a Federal Land Bank Association of Willmar (Bank of Willmar), and the predecessor of respondent, Farm Credit Bank of St. Paul (FCB). The note, secured by the mortgage, was canceled in 1979 and appellant gave a new note and mortgage to FCB.

Appellant was a member of the Bank of Willmar, and held 1,960 shares of stock in the association. He subscribed the stock in connection with the 1979 note and mortgage. The receipt for stock provided the stock:

> [wa]s held by the [Federal Land Bank Association of Willmar] as collateral security for the payment of said loan, subject to all the provisions of the Farm Credit Act of 1971.

The farm crisis of the mid–1980s forced appellant to reamortize the note in 1984. In October 1985, appellant defaulted on the note and mortgage. In 1986, FCB notified appellant of the default and offered mediation services. Appellant presented various proposals to restructure the debt, which FCB rejected as unsatisfactory. Subsequently, appellant sought and obtained a credit review hearing pursuant to the Farm Credit Act. *See* 12 U.S.C. § 2202(a) (1988).

An appeals officer adopted the credit review committee's determination that fore-

closure not be delayed. FCB commenced nonjudicial foreclosure proceedings in November 1987. The foreclosure sale, originally scheduled for February 1, 1988, was twice delayed because FCB informed appellant that it considered his note to be "distressed."[1] Under an amendment to the Farm Credit Act governing the restructuring of distressed loans, the borrower, after being notified by the lender that the lender considers the loan to be distressed, has 45 days within which to submit an application for restructuring. 12 U.S.C. § 2202a(b) (1988). It is noteworthy that FCB gave appellant notice of the distressed nature of his loan despite the fact that the statute requiring such notice was not yet in effect at the time FCB commenced foreclosure proceedings in November 1987. *See* Agricultural Credit Act of 1987, Publ.L. No. 100–233, 101 Stat. 1568 (codified as amended in scattered sections of 12 U.S.C.) (signed into law Jan. 6, 1988, various provisions becoming effective six months later). However, after giving the statutory notice, FCB did not observe the 45–day period to permit appellant to submit an application for restructuring. Instead, eight days after providing the statutory notice, FCB proceeded with the foreclosure action with continued weekly publication of the notice of foreclosure sale. Appellant never did submit an application.

During the pendency of the foreclosure action commenced November 1987, the Bank of Willmar notified appellant that it planned to retire appellant's stock in the association and apply it to offset the outstanding amount owed on the note.

The trial court invalidated the sale resulting from the foreclosure action commenced November 1987 because FCB had not provided notice to a party in possession.[2]

When FCB commenced nonjudicial foreclosure proceedings a second time in December 1989, the statute requiring notification that a note was distressed was in effect. However, FCB did not provide the required statutory notification to appellant and thus failed to offer him a meaningful opportunity to restructure his debt. There were no additional attempts to mediate the debt. The second foreclosure sale occurred on February 29, 1990.

Appellant brought suit to enjoin further foreclosure proceedings and to void the foreclosure sale. The trial court denied appellant's motion to toll the redemption period during the pendency of this action and the redemption period has expired.

1. The Farm Credit Act defines a "distressed loan" as one that the borrower does not have the financial capacity to pay according to its terms and is delinquent or past due under the terms of the loan contract. 12 U.S.C. § 2202a(a)(3) (1988). When a qualified lender such as FCB determines that a loan is distressed, the lender must provide written notice to the borrower that the loan may be suitable for restructuring. 12 U.S.C. § 2202a(b)(1) (1988). Under section 2202a(b)(1):

On a determination by a qualified lender that a loan made by the lender is or has become a distressed loan, the lender shall provide written notice to the borrower that the loan may be suitable for restructuring.

"Restructure" includes:

rescheduling, reamortization, renewal, deferral of principal or interest, monetary concessions, and the taking of any other action to modify the terms of, or forbear on, a loan in any way that will make it probable that operations of the borrower will become financially viable.

12 U.S.C. § 2202a(a)(7) (1988). Upon determination that a loan is distressed, a lender must give the borrower 45 days to file a restructuring application before commencing a foreclosure action. 12 U.S.C. § 2202a(b)(2) (1988) provides:

Not later than 45 days before any qualified lender begins foreclosure proceedings with respect to a loan outstanding to any borrower, the lender shall notify the borrower that the loan may be suitable for restructuring and that the lender will review any such suitable loan for restructuring, and shall include with such notice a copy of the policy and the materials described in paragraph (1).

The Farm Credit Act also limits a lender's ability to foreclose:

No qualified lender may foreclose or continue any foreclosure proceeding with respect to any distressed loan before the lender has completed any pending consideration of the loan for restructuring under this section.

12 U.S.C. § 2202a(b)(3) (1988).

2. This court has subsequently held that a mortgage may be foreclosed despite the mortgagee's failure to provide notice to a person in possession of the mortgaged property with inferior interests to other possessors where lack of service does not result in prejudice. *Farm Credit Bank v. Kohnen,* 494 N.W.2d 44, 48 (Minn.App. 1992), *pet. for rev. denied* (Minn. Feb. 25, 1993).

The trial court awarded FCB summary judgment determining the foreclosure sale to be valid, and dismissed appellant's claim for breach of fiduciary duty and good faith.

## ISSUES

1. May a borrower in a state foreclosure action assert as an equitable defense the lender's failure to comply with substantive provisions of the Farm Credit Act of 1971 and its amendments relating to the borrower's restructuring rights?

2. Did FCB breach an implied covenant of good faith and fair dealing?

3. Does a fiduciary relationship exist as a matter of law between Federal Land Bank Association of Willmar, a cooperative, and appellant such that the cooperative breached a fiduciary duty when it retired appellant's stock without a hearing?

## ANALYSIS

### I.

On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). Where only questions of law are at issue, this court is free to conduct an independent review of the case. *Service Oil, Inc. v. Triplett*, 419 N.W.2d 502, 503 (Minn.App.1988), *pet. for rev. denied* (Minn. Apr. 20, 1988).

The law is well settled that no federal cause of action exists under the Farm Credit Act and its amendments. *E.g., Zajac v. Federal Land Bank*, 909 F.2d 1181, 1183 (8th Cir.1990) (en banc); *Griffin v. Federal Land Bank*, 902 F.2d 22, 24 (10th Cir.1990); *Harper v. Federal Land Bank*, 878 F.2d 1172, 1173 (9th Cir.1989), *cert. denied* 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990). Furthermore, this court has held that the Farm Credit Act

does not create a private state cause of action. *E.g., Ebenhoh v. Production Credit Ass'n*, 426 N.W.2d 490, 492 (Minn.App. 1988), *pet. for rev. denied* (Minn. Sept. 28, 1988); *Production Credit Ass'n v. Van Iperen*, 396 N.W.2d 35, 38 (Minn.App.1986), *pet. for rev. denied* (Minn. Jan. 21, 1987).

Although no private cause of action exists, appellant argues FCB breached the mortgage contract that allegedly incorporated by reference provisions of the Farm Credit Act. We disagree.

Where the contract language is plain and unambiguous, there is no room for construction of the contract. *City of Virginia v. Northland Office Properties Ltd. Partnership*, 465 N.W.2d 424, 427 (Minn.App.1991), *pet. for rev. denied* (Minn. Apr. 18, 1991). Determination of whether a contract is ambiguous and interpretation of an unambiguous contract are questions of law. *Id.* A contract is ambiguous where it is reasonably susceptible to more than one construction. *Id.*

Here, the mortgage stated that it was "subject to" the Farm Credit Act. The mortgage's language is not ambiguous. *See id.* This language alone is insufficient to create rights or obligations in the parties, and cannot support a breach of contract action. *See Van Iperen*, 396 N.W.2d at 38 (language in loan agreement "governed by the Farm Credit Act of 1971 and its regulations" did not create a cause of action for breach based upon violations of the Act).

We cannot conclude our analysis, however, without addressing an unanswered question: must a lender attempting to foreclose a mortgage subject to the Farm Credit Act comply with the Act before foreclosing? Stated another way, does a lender's failure to comply with substantive provisions of the Farm Credit Act provide a borrower with an equitable defense to a state foreclosure action? [3]

*See Clark v. Clark*, 288 N.W.2d 1, 11 (Minn. 1979) ("a court of equity is to be accorded broad latitude in fashioning remedies to meet the particular needs of each case").

---

**3.** Appellant is plaintiff in this matter. However, his action sought to declare the second foreclosure sale invalid because FCB did not comply with the Farm Credit Act. This court has the equitable power to void the foreclosure sale.

Appellant argues that the February 29, 1990, foreclosure sale was not valid because FCB failed to comply with provisions of the Farm Credit Act concerning restructuring distressed loans. *See* 12 U.S.C. § 2202a. Respondent contends, and the trial court found, that FCB did not violate the Farm Credit Act. We disagree.

While appellant, in the first foreclosure proceeding, did not return the application for restructuring within the 45 days provided under the statute, actions taken by FCB during that period were so contrary to appellant's right to submit the application as to make the right meaningless. FCB did not discontinue foreclosure proceedings during the 45 days. *See* 12 U.S.C. § 2202a(b)(3).

Even if we assume that FCB's actions did not violate the Farm Credit Act, because the amendment providing the borrower with restructuring rights was not yet in effect when it commenced the first foreclosure proceeding, FCB's noncompliance with the statutory provisions prevents it from claiming in the second foreclosure action that it had already complied with that statute. In the second foreclosure action, FCB was required to provide written notice to appellant that the loan may have been suitable for restructuring. *See* 12 U.S.C. § 2202a(b)(1). FCB was required to provide this notice "not later than 45 days before [it began] foreclosure proceedings." *See* 12 U.S.C. § 2202a(b)(2). It did not do so. The Farm Credit Act also prohibited FCB from foreclosing or continuing foreclosure proceedings until it had completed consideration of whether the loan was suitable for restructuring. *See* 12 U.S.C. § 2202a(b)(3).

Jurisdictions disagree about whether a borrower may raise as an equitable defense to a foreclosure action the noncompliance of the lender with the Farm Credit Act. Kentucky and North Dakota have recognized such an equitable defense. *E.g., Lillard v. Farm Credit Services of Mid-America, ACA,* 831 S.W.2d 626, 629 (Ky. Ct.App.1991), *pet. for rev. dismissed* (Ky. June 15, 1992); *Federal Land Bank v. Overboe,* 404 N.W.2d 445, 449 (N.D.1987).

*But see Federal Land Bank v. Wright,* 120 Idaho 32, 813 P.2d 371, 374 n. 5 (Ct.App. 1991) ("administrative review [is] the exclusive remedy available to borrower for alleged violation of [farm] credit act").

In *Overboe,* the North Dakota Supreme Court held that although no implied right of action exists for violations of the Farm Credit Act or its regulations, the Act "may nevertheless afford a basis for an equitable defense to a foreclosure action." *Overboe,* 404 N.W.2d at 448. The regulation at issue in *Overboe* directed the lenders to develop loan servicing policies that provide:

a means of forbearance for cases when the borrower is cooperative, making an honest effort to meet the conditions of the loan contract, and is capable of working out of the debt burden.

12 C.F.R. § 614.4510(d)(1) (1987), *quoted in Overboe,* 404 N.W.2d at 447.

The *Overboe* court adopted the rationale applied by some courts to Housing and Urban Development (HUD) regulations and held that the violation of the administrative forbearance regulation provided a valid defense to foreclosure. The court stated:

[j]ust as the HUD regulations were issued in furtherance of national housing goals, the administrative forbearance regulation at issue in this case was adopted * * * in furtherance of * * * fostering agricultural development. *Allowing [the lender] to foreclose its mortgages without regard to the administrative forbearance regulation would be inimical to the achievement of this goal. * * * the failure of [the lender] to comply with the administrative forbearance regulations and policies * * * gives rise to a valid equitable defense to a foreclosure action under state law.*

*Id.* at 449 (emphasis added) (citation omitted).

The Kentucky Court of Appeals also concluded a lender's alleged violations of the Farm Credit Act provide a valid equitable defense to a state foreclosure action. *Lillard,* 831 S.W.2d at 629. In *Lillard,* the borrower asserted the lender violated the Farm Credit Act's provisions limiting a

lender's ability to foreclose during its consideration of restructuring and a borrower's right to appeal an adverse decision. *Id.* at 627 (citing 12 U.S.C. §§ 2202a(b)(3) and 2202(b)(1)). The *Lillard* court relied in part on a concurring opinion in *Zajac* that stated:

> [The borrowers] were completely free to set up, by way of defense to the state-court foreclosure proceeding, their rights * * * under the Agricultural Credit Act of 1987. * * * state courts are open to consider, and in fact are obligated under the Supremacy Clause to consider, assertions of federal statutory right whether they arise as part of someone's claim or as part of a defense.

*Zajac*, 909 F.2d at 1183–84 (Arnold, J., concurring) (emphasis added); *quoted in Lillard*, 831 S.W.2d at 628. The *Lillard* court held that

> the foreclosure action * * * was the logical and appropriate place for the [borrowers] to assert the bank's failure to afford them those rights specifically designed to prevent foreclosure in the first instance. Failure to allow the borrowers to assert such a defense in a state court foreclosure proceeding would essentially render meaningless the rights extended to borrowers under the Act and frustrate the intent of Congress to benefit this nation's struggling farm population.

*Lillard*, 831 S.W.2d at 629.

We find the reasoning of *Overboe* and *Lillard* persuasive, and conclude under Minnesota law that a borrower may assert a lender's violations of a substantive provision of the Farm Credit Act as an equitable defense to foreclosure. In reaching this conclusion, however, we must distinguish *Van Iperen.*

The lender in *Van Iperen* sought to enforce its security interest upon the borrow-er's default. *Van Iperen*, 396 N.W.2d at 36. The borrower asserted a number of affirmative defenses and counterclaims, alleging the lender breached its statutory duty to comply with the Farm Credit Act. *Id.* The provision at issue in *Van Iperen* was the lender's failure to consider forbearance or give notice of denial of credit or right to appeal. *Id.* at 37. The court adopted the federal interpretation of the forbearance regulation and determined that it was not a substantive rule, but a general statement of agency policy. *Id.* at 38.[4] Accordingly, in holding that violations of the Farm Credit Act do not create a state cause of action, this court held:

> To establish a state private cause of action here, [lender] would have to owe [borrower] a duty or obligation based on agency policy. Given the nonsubstantive nature of the Farm Credit Act, we decline to impose such dutiful or obligatory compliance.

*Id.* at 38.

The *Van Iperen* court broadly identified the Farm Credit Act as "nonsubstantive." *Id.* Although under the facts of *Van Iperen* the "nonsubstantive" label may have been appropriate, the statutory provisions at issue in this case fall under the heading of "Rights of Borrowers." *See* 12 U.S.C. § 2199–2202e (1988). Congress intended the Act to provide the borrower with rights and certain protections. Unlike the forbearance regulation addressing general agency policy, the statutory violation asserted here has a direct impact upon the rights of the borrower. Appellant has asserted a violation qualitatively different from the lender's internal lending policies, *see Ebenhoh*, 426 N.W.2d at 493, or the agency policy of forbearance, *see Van Iperen*, 396 N.W.2d at 38; *Bevier v. Produc-*

---

**4.** 12 C.F.R. § 614.4510(d)(1) (1991) provides that when banks and associations develop loan servicing policies and procedures, "the policy shall provide a means of forbearance" for borrowers meeting certain criteria. *See Smith v. Russellville Prod. Credit Ass'n*, 777 F.2d 1544, 1548 (11th Cir.1985) (holding regulation is directed at agency policy and is nonsubstantive). In *Overboe* a lender's violation of this regulation provided the borrower with an affirmative de-fense. *Federal Land Bank v. Overboe*, 404 N.W.2d 445, 449 (N.D.1987). *Van Iperen* considered this administrative regulation to be a statement of agency policy. *Production Credit Ass'n v. Van Iperen*, 396 N.W.2d 35, 38 (Minn.App. 1986), *pet. for rev. denied* (Minn. Jan. 21, 1987). Although in this case we reach a result different from *Overboe*, we nonetheless find its reasoning generally persuasive.

*tion Credit Ass'n,* 429 N.W.2d 287, 289 (Minn.App.1988).

The Farm Credit Act requires that each lender establish a policy governing the restructuring of distressed loans. 12 U.S.C. § 2202a(g)(1). The policy must include procedures for submitting an application for restructuring and a borrower's right to seek review of a denial of an application. 12 U.S.C. § 2202a(g)(2). This case does not involve an allegation that FCB violated its internal policies pertaining to loan restructuring. We need not, therefore, express a view of whether a lender's violation of its restructuring policies falls more appropriately under our holding in this case or our holding in *Van Iperen,* 396 N.W.2d at 38.

The Farm Credit Act provides an administrative scheme for review and consideration of applications for restructuring. *See* 12 U.S.C. § 2202 (1988) (lender must establish a credit review committee, including farmer board representation). Our review of the administrative remedies available, however, does not reveal any provision under which a borrower may assert that a lender did not provide notice that it considered a loan distressed. Under section 2202a(b), a state foreclosure proceeding is tolled until a borrower receives notice of the right to file an application for restructuring. *See* 12 U.S.C. § 2202a(b). The administrative review under section 2202(b)(2) concerning restructuring pertains exclusively to review of a lender's denial of restructuring, not to review of a failure of a lender to afford restructuring rights in the first place. 12 U.S.C. § 2202(b)(2).

Congress intended the Farm Credit Act to address the financial crisis in the Farm Credit System. *Harper,* 878 F.2d at 1174–75. The provisions for restructuring distressed loans also indicate Congress intended that a borrower be afforded restructuring rights prior to foreclosure. *See* 12 U.S.C. § 2202a(b)(3); *Zajac,* 909 F.2d at 1183 ("[w]e cannot ignore, however, the section of the Act that restricts foreclosure proceedings"). Such procedures are particularly appropriate in this case where FCB sought to foreclose appellant's mortgage by advertisement. Unlike a foreclosure by advertisement proceeding.

action before the district court, a borrower has no ability to raise an equitable defense in a foreclosure by advertising proceeding.

The state court, therefore, is an appropriate forum to allow the borrower to assert a lender's violation of a substantive provision of the Farm Credit Act as an equitable defense to foreclosure proceedings. *See Lillard,* 831 S.W.2d at 629. Compelling the lender to conform to the provisions of the Farm Credit Act furthers the congressional policy of advancing agricultural development. *See Overboe,* 404 N.W.2d at 449. The failure of FCB to afford restructuring opportunities to appellant before commencing the second foreclosure action provides a defense. The foreclosure sale must be voided.

**II.**

■ Appellant next claims FCB breached a covenant of good faith and fair dealing implied in the mortgage by failing to follow the Farm Credit Act and failing to offer mediation under the Farmer–Lender Mediation Act. *See* Minn.Stat. §§ 583.20—583.32 (1988). We disagree.

■ A lender does not act in bad faith by asserting or enforcing its legal and contractual rights. *Creeger Brick & Bldg. Supply, Inc. v. Mid–State Bank & Trust Co.,* 385 Pa.Super. 30, 560 A.2d 151, 154 (1989). FCB provided mediation to appellant in the first foreclosure action. Under the Farmer–Lender Mediation Act, FCB was not required to offer mediation when it sought foreclosure a second time. *See* Minn.Stat. § 583.24, subd. 4 (1988). Unlike the restructuring notice and 45–day application period discussed earlier, there is no evidence in the record that appellant was not given a "meaningful" opportunity to mediate in connection with the first foreclosure.

Appellant's reliance on *Haase v. Stokely–Van Camp, Inc.,* 257 Minn. 7, 13, 99 N.W.2d 898, 902 (1959) for the proposition that FCB acted in bad faith by making it impossible for him to perform is misplaced. No action by FCB precluded appellant from performing his obligations under the mortgage.

### III.

Lastly, appellant argues the Federal Land Bank of Willmar, the predecessor of FCB and a cooperative in which appellant owned stock, owed a fiduciary duty to him as a matter of law. Appellant contends FCB breached that duty when it failed to negotiate in good faith, and retired appellant's stock and applied it to the outstanding note without notice. Again, we disagree.

 A fiduciary relationship may exist between a farm borrower and farm cooperative, such as a production credit association or federal land bank, but the relationship does not exist as a matter of law. *E.g., Production Credit Ass'n v. Ista,* 451 N.W.2d 118, 121 (N.D.1990). Whether a fiduciary relationship exists is a question of fact. *Toombs v. Daniels,* 361 N.W.2d 801, 809 (Minn.1985).

In the context of the Farm Credit Act, a finding of a fiduciary relationship requires a showing of special circumstances demonstrating a departure from the lender-borrower relationship. *E.g., Federal Land Bank v. Stiles,* 700 F.Supp. 1060, 1066 (D.Mont.1988); *Mantooth v. Federal Land Bank,* 528 N.E.2d 1132, 1139 (Ind.Ct.App. 1988); *Kurth v. Van Horn,* 380 N.W.2d 693, 695–96 (Iowa 1986); *Production Credit Ass'n v. Davidson,* 444 N.W.2d 339, 347 (N.D.1989); *Production Credit Ass'n v. Croft,* 143 Wis.2d 746, 423 N.W.2d 544, 547 (Ct.App.1988), *pet. for rev. denied* 144 Wis.2d 956, 428 N.W.2d 554 (1988).

> Special circumstances include situations where the bank knows or has reason to know the [borrower] is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him.

*Klein v. First Edina Nat'l Bank,* 293 Minn. 418, 422, 196 N.W.2d 619, 623 (1972). Appellant has not demonstrated special circumstances beyond a typical lender-borrower relationship sufficient for this court to conclude a fiduciary relationship existed. *See id.*

 Furthermore, FCB did not breach a fiduciary duty when it retired appellant's stock. A federal land bank association must provide through by-laws the manner in which stock is issued, held, transferred, and retired. 12 U.S.C. § 2094 (1988). The record indicates appellant subscribed the stock as collateral security against the 1979 note and mortgage. Appellant has not provided any evidence that the cooperative violated its by-laws or discriminated against him. Appellant's subscription of the stock as collateral, therefore, justified its retirement by FCB upon default.

### DECISION

The foreclosure sale is voided. The failure of FCB to comply with the substantive provisions of the Farm Credit Act regarding restructuring rights available to appellant provides an equitable defense to the foreclosure. The court correctly concluded that special circumstances beyond a typical lender-borrower relationship did not exist between FCB and appellant to demonstrate a fiduciary relationship and accordingly, FCB did not breach a fiduciary duty when it retired appellant's stock in the association without notice.

**Affirmed in part and reversed in part.**